FILED

Nov 21   I  os PM '03

U S DISTRICT COURT
N. CONN.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT M. HARTRANFT, JR., | : | DOCKET NO. 3:01CV1870(GLG) |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| HARTFORD LIFE AND ACCIDENT | : | |
| INSURANCE CO. and HSB GROUP, INC. | : | |
| Defendants. | : | November 20, 2003 |

## MOTION IN LIMINE

In this claim under 29 U.S.C. §1132(a)(1)(B) for long term disability benefits under an

ERISA-governed employee welfare benefit plan (the "Plan"), plaintiff hereby moves the Court

for rulings on the standard of review and the scope of the evidence.  Plaintiff submits the Court

should review his claim *de novo*, and should permit him to introduce evidence beyond the

administrative record.  As set forth more fully below, *de novo* review is justified because the Plan

did not reserve discretion in the administrator, and because the claim was reviewed by a

conflicted administrator.  On *de novo* review it is appropriate for the Court to exercise its

discretion to admit additional evidence for those reasons and because plaintiff was never given

an opportunity to rebut the inappropriate analysis by the reviewer.

## STATEMENT OF FACTS

Robert Hartranft was an employee of HSB Group, Inc. d/b/a Hartford Steam Boiler, or its

predecessors ("HSB") from 1996 through March 1, 1999.  Hartranft Affidavit, attached hereto as

Exhibit A, ("Hartrant Affid.") ¶5.  As an employee of HSB, Mr. Hartranft was covered under a

disability benefit policy (the "Plan"), which was an Employee Welfare Benefit Plan as defined under 29 U.S.C. §1002(1).

HSB provided Mr. Hartranft with a loose leaf Handbook, "Making Tracks," at the commencement of his employment. The Handbook consisted of separate tabbed sections describing employment policies, generally, and, in separate sections, describing benefits which HSB offered its employees. One section of the Handbook was a Summary Plan Description ("SPD") of the Disability Income Plan provided to HSB employees, which described both Short-Term Disability benefits ("STD") and Long-Term Disability benefits ("LTD"). Hartranft Affid. ¶¶6-8 and Exhibit 1 thereto. Among other terms and conditions, HSB's Plan allowed an employee to purchase "Increased LTD" coverage through payroll deductions. *Id.* p. O-5. Mr. Hartranft did purchase Increased LTD coverage, and HSB deducted the premium from his wages in each pay check. Hartranft Affid. ¶¶10-11.

According to Jodi Lussier, who was HSB's Assistant Vice President of Benefits Administration during Mr. Hartranft's employment, the purpose of the Handbook was to serve as the Summary Plan Descriptions for the benefit plans offered to HSB employees. Lussier Deposition, attached hereto as Exhibit C (hereinafter "Lussier Depo."), pp. 7, 11-13, Exhibit 1.[1]

The SPD does not contain a single word regarding modification or termination of the

---

[1] Plaintiff noticed the Deposition of HSB pursuant to Rule 30(b) (6), Fed.R.Civ.P., and HSB provided Ms. Lussier as its representative to testify on its behalf, although she is no longer employed by HSB.

LTD Plan. Nothing in the SPD suggests that HSB can reduce, withdraw or modify the coverage or the terms upon which coverage is available. Hartranft Affid. Exhibit 1. The SPD also does not contain any reference to discretion in a Plan Administrator to determine eligibility for benefits or to interpret the Plan's terms. Finally, the SPD does not inform Mr. Hartfranft that the LTD Plan is an insurance policy through Defendant Hartford Life and Accident Insurance Company ("HLI"). The only mention of HLI is that it "can offer assistance with the process" of obtaining SSDI benefits after LTD benefits have been approved. Mr. Hartranft, of course, applied for and received SSDI benefits on his own, before HLI had responded to his initial application.

Anticipating an argument the defendants may attempt to make, there is a statement in a different tabbed section of the Handbook, the section named "Equal Employment Opportunity and Affirmative Action," which states,

> The descriptions in Making Tracks are intended solely to highlight HSB policies and benefit plans. Descriptions are not intended as substitutes for the documents which legally govern each policy and benefit plan summarized in this handbook.

Hartranft Affid. ¶31. But this statement does not relieve HSB of its obligation, as plan administrator, to see that this SPD clearly informed Mr. Hartranft of the material terms of his welfare benefit plan. And it certainly is not an explicit warning that the benefits, or the terms and conditions upon which the benefits are available, can be modified.

The very last clause of the Disability Income Track section indicates that coverage will

end if the plan is terminated; *id* Exh. 1, p. O-8; but there is no indication of the circumstances under which this may occur.

Mr. Hartranft had been diagnosed with Parkinson' Disease in 1993, several years before he commenced his employment with HSB. Hartranft Affid. ¶12. During the fall of 1998 and through 1999, Mr. Hartranft suffered severe and progressive physical symptoms, including fatigue, sleep disturbance, headaches, upper respiratory tract infection symptoms, loss of balance and gastrointestinal distress. Hartranft Affid. ¶13. He became severely depressed as well, by early 1999. Hartranft Affid. ¶16. He denied that his symptoms were permanent, during 1998 and 1999, and insisted that he simply had a bad cold or some temporary health problem. Hartranft Affid. ¶¶17-18. By early 2000, it was unavoidably apparent that his health was not improving. Hartranft Affid. ¶18. He had become disabled during 1998, and he had simply refused to admit it. Hartranft Affid. ¶¶19-20.

Mr. Hartranft wrote to HSB in April, 2000 and again in June, 2000, and requested that HSB consider his application for STD and LTD benefits effective from the last date he worked. He requested a copy of the <u>actual policy</u> under which he had LTD coverage while he was employed at HSB to make sure he would understand fully how to make the claim. Lussier Depo. pp.29-31, Exh. 4. She believes she responded with a document titled "The HSB Group, Inc. Employees' Disability Plan." *Id.*, Exh. 3. She admits she cannot be certain what documents she sent. *Id.* p. 61. What Mr. Hartranft received, however, was the Booklet, which stated the terms

of the HLI insurance <u>Policy</u> for HSB employees. Hartranft Affid. ¶24 and Exhibit 2. That Booklet contains no statement sufficient to reserve discretion in anyone. It does state, at Page 2, that the Booklet is "part of the Group Insurance Policy," and that <u>the pages of the Booklet contain the terms of the Group Insurance Policy.</u>

The Booklet itself contains a specific assurance that once an employee has become disabled his coverage will not end even if the Plan itself is terminated. Hartranft Affid. ¶¶23-24 and Exh. 2, p. 15. The Booklet states, on that page, that if the plan terminates, benefits will continue so long as the covered employee remains disabled by the same disability; and that termination of the plan will have no effect on HLI's liability.

There is not a word in the SPD about discretionary authority. The SPD notes only that an employee who applies for benefits may be required to have a medical examination and that the employee must apply for SSDI if he receives LTD benefits. In the Booklet, there is no statement sufficient to reserve discretion in anyone. The Booklet states that HSB is the Plan Administrator.

In March, 1999, after Mr. Hartranft was totally disabled, and after he was no longer an HSB employee, HLI sent HSB an amendment to the LTD policy. According to Antoinette G. ("Sue") Adamowicz, who was produced as HLI's representative in response to a Rule 30(b)(6) notice of the deposition of HLI, seeking information on how and when the Endorsement amended the Policy, she was responsible for issuing the Endorsement and a related Rider on or about March 23, 1999, to amend the Policy. Adamowicz Depo. pp. 4-9 and Exh. L. That

Endorsement expressly states that "The Hartford has full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." *Id.*, Exh. L p. 2. The Endorsement did not exist until Ms. Adamowicz created it in March, 1999, and it was not made part of the Policy either at HLI's offices or HSB's offices until on or after March 23, 1999. *Id.*

The decision to amend the Policy was made by an attorney at HLI. Adamowicz Depo. p. 7. Ms. Lussier confirmed that nobody at HSB took part in a decision to amend the Policy to include the language in the Endorsement. Lussier Depo. pp. 105-06. Ms. Lussier does not recall receiving the letter from Ms. Adamowicz, and does not know when the Endorsement was received by HSB. *Id.* 97-100.

Ms. Lussier was Assistant Vice President for Benefits Administration at HSB at the time; she holds a Master's Degree "with a concentration in human resources management and a professional designation in benefits administration." Lussier Depo. pp. 10-13. She stated that she believed the Endorsement was simply added "because it was required to be, not because it was a conscious decision to add it." *Id.* She believed that the Endorsement was effectively already in the Policy, and had been since January, 1998. Lussier Depo. pp. 101-03. Reviewing the Booklet, the sole language she found which she believed similarly reserved discretion in HLI were three provisions. First, she believed that the Page 15 language cited above, "You submit proof of loss satisfactory to The Hartford," reserved discretion in HLI. Second, she believed

language at Page 22 of the Booklet, stating "On any denied claim you ... may appeal to The Hartford for a full and fair review" and "a decision will be made by The Hartford," was sufficient to reserve discretion in HLI. Third, she believed the language "A decision will be made by the insurance company no more than 90 days after receipt of due proof of loss" sufficed to reserve discretion in HLI. *Id.* In sum, Ms. Lussier did not believe this was a material modification of the Policy.

Ms. Lussier testified, further, that when an endorsement was added to the Policy HLI sent sufficient copies so that HSB could provide a copy to each new employee and each current employee. Lussier Depo. pp. 90-96. She said shortly after the Policy went into effect, they sent a set of Endorsements to all employees. At intervals she would ask HLI for a complete set of Endorsements and mail them out to current, but not past, employees. *Id.* In July, 2000, after she had sent the Policy to Mr. Hartranft, Ms. Lussier wrote to HLI and indicated she did not have a complete set of the Endorsements to the Policy. *Id.* pp. 90-94 and Exhibits 23 and 24. She does not know which ones were missing. She believes that sometime after she received the complete set she would have sent them to all current employees. *Id.*

As stated above, Mr. Hartranft appealed the denial of STD benefits in June, 2000. The HSB Disability Committee is the Plan Administrator for both the LTD and the STD benefits. Lussier Depo. p. 15. In order to consider this appeal, the Committee asked Ms. Lussier to gather further information about Mr. Hartranft's attendance at the end of his employment and further

information from co-workers. *Id.* pp. 63-65. Interestingly, Ms. Lussier spoke with several employees and kept notes of their comments. The one person whose conversation she did not memorialize was Bernd Selig. Mr. Selig was the manager who had worked most closely with Mr. Hartranft. His affidavit, with his observations that Mr. Hartranft was uncharacteristically failing to complete any work for nearly the last year of his employment, was part of the administrative record. Ms. Lussier could recall nothing of what he said, except that he had known Mr. Hartranft for many years and considered him a friend. But Ms. Lussier did speak with him, and gather other information for the Disability Committee. The Disability unanimously voted to overturn the denial of benefits and grant STD benefits in the amount of approximately $30,000.00. Lussier Depo. pp. 29-37, 44-45, 75-76, 132.

HSB and HLI have proffered several documents, very recently and not when the Court ordered them to produce the Plan in the summer of 2002, in lieu of Rule 26(a) disclosures. According to these documents, beginning January 1, 1998, HSB and HLI came to an agreement that HLI would determine appeals from denials of LTD benefits. Prior to that time, HLI had provided only administrative services, and HSB, the Plan Administrator, had any final authority over appeals under the LTD Plan. Lussier Depo. pp. 97-101. When that agreement became effective, HLI began to prepare the Booklet to set forth the terms of the insurance policy under which it was to insure the LTD benefits.

Ms. Lussier insisted that the true disability Plan for HSB employees, of which the Policy

was only an incorporated part, was a document first disclosed to plaintiff and his attorney a few

days prior to the Deposition, on or about September 15, 2003, titled "The HSB Group, Inc.

Employees' Disability Plan." Lussier Depo. pp. 22-26, Exh. 3. Again, Ms. Lussier, the Vice

President for Benefits Administration with a professional degree and a certification in employee

benefits, was asked to take all the time she needed and identify, in that document, any reservation

of discretion in HLI. Lussier Depo. pp. 67-69, Exh. 3. She did not identify any language that

would sufficiently reserve discretion in any entity. Prompted by HSB's attorney, Ms. Lussier did

repeat one sentence from this document, "The disability committee has sole discretion to

determine whether a particular situation is intended to be covered by the plan." *Id.* p. 116.

Among other possible meanings of this phrase, Ms. Lussier admitted it might mean, in her

words, they determine whether "this is a disability situation or is this a Workers' Comp

situation," or any number of other things. pp. 22-26. It does not refer to disability

determinations, but to the Disability Committee's broader duties related to the plan. *Id.* p. 26.

　　　Mr. Hartranft's application for LTD benefits was forwarded by HSB to HLI. It is worthy

of note that HLI was not an "ASO," or "Administrative Service Organization" to a self-funded

Plan at that time, as it had been prior to January 1, 1998. HLI had an obligation to fund any

benefits that would be paid, but HSB remained the Plan Administrator. Yet only HLI, and not

the HSB Disability Committee that had voted unanimously to provide the STD benefits, took

part in deciding Mr. Hartranft's claim. As the party that both paid the benefits and reviewed the

claim, HLI certainly had a conflict of interest.  If any person or entity had discretion, it was not HLI, which was neither the HSB Disability Committee nor its ASO.  This Plan, if it is applicable at all despite its contradictions to the SPD and its other inconsistencies with other documents proffered by the defendants, provides that <u>only</u> the Senior Officers of HSB may amend the Plan's terms.  Lussier Depo. Exh. 3 p. HSB0131;  and even if they do, it is ineffective to deprive anyone of benefits "on account of any Disability already incurred."  According to Ms. Lussier, it was HLI alone, and not the Senior Officers of HSB, that decided to add the Endorsement.  The Endorsement was not properly adopted in accord with the Plan's terms, and it is therefore ineffective as against anyone.

HLI indicated, in response to the final administrative appeal in this matter, that in order to provide an "independent" review, HLI referred the claim to its "Appeal Unit" to conduct the review separately from the first-level review.  Meyer Affid. ¶6 and Exh. 1.  Nonetheless, these are still employees of HLI.  From the letter denial, Mr. Hartranft learned, for the first time, that HLI had participation from two physician reviewers affiliated with an entity called "University Disability Consortium."  Only after the final administrative review, did Mr. Hartranft learn that these two physicians had not focused on whether Mr. Hartranft was disabled because of sickness during the relevant time, but on whether his treating physician was able to definitively state the diagnosis Chronic Fatigue Syndrome, in the presence of the Parkinson's Disease and Major Depression he was suffering at the time.  Meyer Affid. ¶7and Exhibit 2.

Since Mr. Hartranft was not made aware that this evidence would be added to the administrative record, and since he also had not received a policy that reserved discretion in the reviewer, Mr. Hartranft would not have known that he needed to rebut the evidence in the administrative record or add further medical explanation regarding the confusion of symptoms and diagnosis. If the questions had been raised before the final review, Mr. Hartranft could have brought an expert on Parkinson's Disease to explain the overlapping physiological, psychological and neurological problems he has suffered continually from late 1998 through the current time.

University Disability Consortium ("UDC") performed no reviews at all for HLI during the year 2000. Meyer Affid. Exh. 3 p. 8, No. 3. HLI's discovery responses indicate this business relationship was just beginning. During the nine week period leading up to its activities on Mr. Hartranft's claim, UDC provided medical records review services in "approximately 30 claims." for HLI, earning fees of $23,270.00. *Id.* p. 8, No. 4, p. 10 No. 8. UDC, in starting this business venture with HLI, had every reason to provide the answers HLI wanted to hear.

## LEGAL ARGUMENT

### I. THE COURT SHOULD REVIEW MR. HARTRANFT'S CLAIM *DE NOVO.*

"[A] denial of benefits challenged under Section 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire

& Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).

The defendants bear the burden of proving the Court should not review this claim *de novo.* "The plan administrator bears the burden of proving that the arbitrary and capricious standard of review applies, since 'the party claiming deferential review should prove the predicate that justifies it.'"  Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 249 (2nd Cir. 1999) (citing and quoting Sharkey v. Ultramar Energy Ltd., 70 F.3d 226, 230 (2d Cir. 1995)).

The defendants cannot avoid the *de novo* standard in this case because the Plan, as it applied to Mr. Hartranft, did not contain a proper reservation of discretion in HLI, the entity that reviewed the claim.  The only document which arguably could provide for discretion in HLI to determine eligibility or construe Plan terms is the March 23, 1999 Endorsement to the Policy. But if that Endorsement was effective at all, it does not apply to Mr. Hartranft.


**A.**   **THE APPLICABLE PLAN TERMS ARE THOSE PROMULGATED BEFORE MR. HARTRANFT BECAME DISABLED.**

First, in light of the fact that the defendants agreed to modify the Plan during the course of Mr. Hartranft's employment, the Court must determine the applicable plan terms.  The Plan that applies to Mr. Hartranft is the SPD that was provided to him, and the written plan that was in effect at the time he became disabled, to the extent it does not conflict with the SPD or contain material terms of which Mr. Hartranft was not apprised while he was still an employee.

> [A]s a matter of law, absent explicit language to the contrary, a plan document providing for disability benefits promises that these benefits vest with respect to an employee no later than the time that the employee becomes disabled.

Feifer v. Prudential Ins. Co. of America, 306 F.3d 1202, 1212 (2nd Cir. 2002).

HLI and HSB would like to argue that by an agreement between them undisclosed to Mr. Hartranft, they could amend the Plan's terms retroactively. A plan administrator cannot subsequently create different terms and apply them retroactively to an employee who was already disabled at the time of the modification. *Id.* As the Feifer Court explained, a disability insurance plan should be analyzed as a unilateral contract which the employee accepts by accepting or continuing employment. As to most employees, they have a choice of seeking better terms elsewhere. But once an employee has become disabled, he is no longer in a position to decline the offered terms and choose another employer or add a private disability policy with better terms. Once Mr. Hartranft was totally disabled, he was vested in the benefits under the Plan, as a matter of law, and neither HSB nor HLI had authority to change the terms as to him.

The vesting rationale of Feifer applies *a fortiori* in Mr. Hartranft's case for two reasons. First, Mr. Hartranft's acceptance of the offered terms went beyond simply continuing in HSB's employ. Mr. Hartranft purchased additional coverage under the offered terms, and HSB deducted money from his wages to pay for the additional premiums. Second, the Plan at issue contains express assurances that once an employee becomes disabled, the benefits vest and cannot be changed even if the Plan is terminated. The Policy Booklet states, at Page 15, that even

if the Plan were to terminate, benefits would continue. The SPD provides no indication the Plan

may ever change. The new plan document provided to plaintiff for the first time in September,

2003 expressly states, like the SPD, that no amendment will be effective to deprive anyone of a

benefit for a disability he has already incurred. From the point of view of a person of ordinary

intelligence, this would indicate that the benefit is guaranteed, or vested, once an employee has

become disabled. Even though the employer may cease to provide any LTD benefit plan to its

employees, an employee who has already become disabled need not fear elimination of his

benefits. That is the essence of the concept of vesting.

The Policy Booklet contains a provision, at Page 26, to the effect that the Plan

Administrator reserves full authority to amend or modify the Plan. This is not an "explicit

provision" to the effect that the plan administrator can unilaterally change the terms of long-term

disability benefits <u>after</u> the date of disability, which <u>Feifer</u> requires, in order to overcome the

legal presumption that the benefit has vested and can no longer be altered. Moreover, taken

together with the provision, at Page 15, that even a termination of the Plan will not effect the

obligation to pay benefits to an already-disabled employee, the Plan as a whole assures that

benefits vest on the date of disability, and the terms cannot be changed as to that employee.

The Making Tracks Handbook also contains a disclaimer, in small print at the bottom of

the Equal Employment Opportunities section, that the SPD is not a substitute for the Policy.

Neither this statement nor a statement that the Plan will be interpreted in accord with a policy or

document on file in HLI's offices is effective to change the terms set forth in the SPD provided to Mr. Hartranft before he became disabled, or to introduce the possibility that another term may become applicable after he has become disabled. <u>Heidgerd v. Olin Corp.</u>, 906 F.2d 903, 908 (2nd Cir. 1990); <u>Feifer v. Prudential Ins. Co. of America</u>, 306 F.3d at 1209-10. The defendants could not avoid or change the terms of the Plan by a subsequent document. 306 F.3d 1210.

**B.     THE PLAN APPLICABLE TO MR. HARTRANFT'S CLAIM DID NOT CONTAIN A RESERVATION OF DISCRETION.**

The Booklet states, at Page 21, "The Hartford reserves the right to determine if your proof of loss is satisfactory." This is precisely the sort of language the Second Circuit held insufficient in <u>Kinstler v. First Reliance Standard Life Ins. Co.</u>, 181 F.3d 243, 251 (2nd Cir. 1999). The <u>Kinstler</u> Court explained that language to the effect that the proof must be satisfactory to the decision-maker, merely states the obvious point that the recipient of the proof is the decision-maker. <u>Id.</u> It is not sufficient to reserve discretion. The Plan at issue in this case simply states that The Hartford can determine whether the proof of loss is satisfactory, which is equivalent to the language of the plan in <u>Kinstler</u>, that the proof must be satisfactory to the decision-maker. Neither is a reservation of discretion to adjudicate the claim.

**C.  RESERVATION OF DISCRETION IS A MATERIAL TERM**

Whatever was intended when ERISA was first promulgated, there can be no rational

question that a reservation of discretion in an administrator is a central material term of any welfare benefit plan.

The statute and the Department of Labor's Regulations place the burden on employers to draft an accurate, comprehensible, and clear SPD regarding restrictions on eligibility for benefits. §§1022(a), (b); 1024(b); 29 C.F.R. §§2520.102-2(b), 2520.102-3. In <u>Burke v. Kodak</u>, 2003 U.S.App. LEXIS 14523 (2nd Cir. 2003), the Court noted that the SPD is the chief source of information on the plan for employees.

> The consequences of an inaccurate SPD must be placed on the employer. The individual employee is powerless to affect the drafting and less equipped to absorb the financial hardship of the employer's errors. [*Citation omitted*]. The employer, however, receives a substantial benefit in return: a defense against certain state law claims. *Id.* (employer benefits from "protection afforded by *ERISA's* preemption of state law causes of action ... which threaten considerably greater liability than that allowed by *ERISA*"). [*Citation omitted.*]

> Cognizant of *ERISA's* distribution of benefits, we require, for a showing of prejudice, that a plan participant or beneficiary was likely to have been harmed as a result of a deficient SPD. Where a participant makes this initial showing, however, the employer may rebut it through evidence that the deficient SPD was in effect a harmless error.

<u>Burke v. Kodak</u>, 2003 U.S.App. LEXIS 14523 at *23-24.

Beyond any dispute, the SPD did not contain any reservation of discretion. Prejudice from an SPD's omission of a material term is presumed, and plaintiff need not show actual prejudice. <u>Burke v. Kodak Retirement Income Plan</u>, 336 F.3d 103 (2nd Cir. 2003). The failure to notify Mr. Hartranft that HLI had full discretion to interpret the Plan's terms and determine his

eligibility did, in fact, prejudice him. If he had been made aware that HLI could exercise such broad discretion to deny his disability benefits, he might have sought employment elsewhere before he became disabled, or he might have used his money to purchase some other disability insurance, rather than pay for supplemental benefits under this plan. If he had been made aware of these terms, he might, at the least, have requested a full hearing as part of the administrative proceedings, so that he could cross examine the HLI decision makers and experts after their medical opinions and evaluations were provided.

Where there is any conflict between the terms stated in the SPD and the terms of the Plan, the representations in the SPD control. Heidgerd v. Olin Corp., 906 F.2d 903, 907-08 (2nd Cir. 1990). It would have been a simple matter for HSB to explain the restriction on benefits that occurs, when a private insurer's decision not to pay a claim can be reviewed only highly deferentially. This is not a term HSB should conceal from its employees, especially when it makes payroll deductions from their wages to sell them additional coverage.

In McKnight v. Southern Life & Health Insurance Co., 758 F.2d 1566 (11th Cir. 1985), the terms of an SPD were applied even though they conflicted with the plan's terms. This was so despite the standard sort of disclaimer found in the SPD in the instant case. The court noted, "It is of no effect to publish and distribute a ... summary booklet designed to simplify and explain a voluminous and complex document, and then proclaim that any inconsistencies will be governed by the plan. Unfairness [would] flow to the employee for reasonably relying on the summary

booklet."  Accord, <u>Heidgerd v. Olin Corp.</u>, 906 F.2d 903 (2d Cir. 1990).]

The language of the Plan at issue in this case is not like that in <u>Dobson v. Hartford</u>

<u>Financial Services</u>, 196 F.Supp. 2d 152 (D.Conn. 2002).  In that case, the plan clearly provided,

"The Hartford has full discretion and authority to determine eligibility for benefits and to

construe and interpret all terms and provisions of the Plan."

### D.  FAILURE TO PROVIDE ALL PLAN DOCUMENTS UPON REQUEST JUSTIFIES DE NOVO REVIEW.

If the Court were to accept the defendants' late assertions that the applicable plan consists

of documents never before provided to him, despite requests and the Court's direction, that is

sufficient in itself to justify *de novo* review.  There is substantial reason why plan administrators

are subject to penalties under 29 U.S.C. §1132(c) and 29 C.F.R. §2560.503-1(f) for such conduct.

It prevents employees from perfecting their internal appeals, if they cannot determine the

applicable provisions.  From what was provided to Mr. Hartranft while he was employed at HSB,

he had every reason to believe the HSB Disability Committee would review his LTD claim as

well as his STD claim.  That entity already granted STD benefits.

The failure to provide all pertinent documents and information may, in itself, even entitle

a participant to benefits, as in <u>Juliano v. The Health Maintenance Organization of New Jersey</u>,

221 F.3d 279 (2nd Cir. 2000), because the Company has prevented perfection of the appeal.  At a

minimum, it is a basis for *de novo* review.

## II.   THE COURT SHOULD CONSIDER EVIDENCE BEYOND THE ADMINISTRATIVE RECORD.

Plaintiff submits that in this case the Court should consider evidence beyond the administrative record. Even when it reviews an ERISA eligibility determination *de novo*, the court is limited to a review of the evidence in the administrative record absent good cause to consider additional evidence. Connors v. Connecticut General Life Ins. Co., 272 F.3d 127, 134-35 (2nd Cir. 2001) (citing DeFelice v. Am. Int'l Life Assurance Co., 112 F.3d 61, 66-67 (2d Cir. 1997)).

The Court has discretion to admit and consider evidence beyond the administrative record where there is good cause to do so. DeFelice, 112 F.3d 66. Plaintiff submits there is good cause in the instant case, and he asks that the Court permit him to introduce evidence beyond the administrative record to ensure a fair review of his claim.

DeFelice established the concept of a "structural" conflict of interest: where the administrative reviewer is also the party that is obligated to pay, if the decision favors the claimant, this fact is sufficient to create good cause to go beyond the administrative record. The plaintiff need not show any actual prejudice where there is a structural conflict. 112 F.3d 67. In DeFelice, the fact that the review committee "was comprised entirely of [the insurer's] employees – hardly a neutral decision-making body," sufficed to establish a structural conflict. 112 F.3d 66. There were additional aggravating factors in DeFelice, such as a lack of written claims review standards and the destruction of records; but the Court held that the structural

conflict alone constituted good cause to admit additional evidence.  Where a structural conflict is found, the Court should not limit its consideration to matters reviewed in the administrative proceedings.  *Id.*

In determining what constitutes good cause to admit additional evidence, it is helpful to consider the rationale of the <u>DeFelice</u> Court.  The Court explained that "the normal scope of limited '*de novo*' review is inappropriate where the fairness of the ERISA appeals process cannot be established using only the record before the administrator."  *Id.*  If it is not certain, from the record, that the administrative appeal process was applied fairly, "courts must exercise fully their power to review *de novo* and to be substitute administrators."  *Id.*  Plaintiffs are "utterly helpless against the whim" of a conflicted body's interpretation of the facts.

As in <u>DeFelice</u>, limiting the scope of *de novo* review would be unfair in this case.  The plaintiff's helplessness against the whim of HLI's and its reviewers' interpretation of facts is apparent.  First, a decision rendered by the "Appeal Unit" of HLI is simply the decision of employees of HLI, the party liable for paying the claim.

Further, the physicians hired to speak with Mr. Hartranft's treating doctors practically cross examined them about the precise diagnosis during 1999, rather than seek information about Mr. Hartranft's actual physical and mental condition.  They narrowed their questions to whether a particular diagnosis, Parkinson's, attributed to all of his symptoms, and whether the diagnosis Chronic Fatigue Syndrome could be applied in the presence of either Parkinson's or Major

Depression. The question should have been whether Mr. Hartranft was prevented by sickness

from performing the essential duties of his occupation -- or any occupation.

from <u>Locher v. Unum Life Ins. Co. of America</u>, 126 F.Supp. 2d 769 (S.D.N.Y. 2001):

see also <u>Parker v. Reliance Standard Life Insurance</u>, 2000 U.S. Dist. LEXIS 784, 2000 WL

97362 at *2 (S.D.N.Y. Jan. 27, 2000); *O'Rourke v. Pitney Bowes, Inc., 1997 U.S. Dist. LEXIS*

*11002, 1997 WL 431091,* at *6 n.6 (S.D.N.Y. July 31, 1997) (noting that a district court may

consider additional evidence where the decision maker is conflicted).

When faced with the question of whether a plan administrator is conflicted within the

meaning of DeFelice, courts have focused on whether the plan administrator both determines

eligibility for benefits and pays the benefits itself, without reimbursement. <u>Parker v. Reliance</u>

<u>Standard Life Insurance</u>, 2000 U.S. Dist. LEXIS 784, 2000 WL 97362 at *3; <u>Conners v.</u>

<u>Connecticut General Life Ins. Co.</u>, 1999 U.S. Dist. LEXIS 19384, 1999 WL 1211831, at *3

(S.D.N.Y. Dec. 16, 1999) (limiting review to the record where the employer, not the plan

administrator, ultimately pays all amounts due under the plan, and finding that, therefore, there is

no conflict of interest); <u>MacMillan v. Provident Mutual Life Ins. Co. of Philadelphia</u>, 32 F. Supp.

2d 600, 615 (W.D.N.Y. 1999) (allowing plaintiff to submit additional evidence because

defendant was conflicted in the same way as defendant in <u>DeFelice</u>: the claims administrator paid

the benefits, so it had an obvious interest in denying benefits); <u>Janas v. Continental Casualty</u>

<u>Co.</u>, 1999 U.S. Dist. LEXIS 21266, 1999 WL 31006, at *4 n.1 (N.D.N.Y. Jan. 15, 1999) (holding

that plan administrator was operating under a conflict of interest where benefits would be paid

directly by the plan administrator).

The Court in <u>Black & Decker v. Nord</u>, 2003 U.S. LEXIS 4061 (2003), although it

rejected the "treating doctor rule" applicable to Social Security Disability cases, acknowledged

the validity of the concern that consulting doctors may also have conflicts of interest because of

their interest in continued employment, especially if they are repeatedly retained by benefits

plans. *Id.* at *19.


**B. THE COURT SHOULD ADMIT ADDITIONAL EVIDENCE TO PERMIT A FULL AND FAIR REVIEW OF PLAINTIFF'S CLAIM.**

On *de novo* review, the question for the Court is whether Mr. Hartranft was prevented by

sickness from performing the essential duties of his occupation – or any occupation, from

February, 1999 through the date of the trial. The question is not whether a particular physician

has a diagnostic category into which he can securely confine Mr. Hartranft with his constellation

of symptoms. That question can best be addressed, especially in light of the issues raised by HLI,

by hearing additional evidence from people who lived and worked with Mr. Hartranft at the time.

It would be appropriate to have an expert in Parkinson's Disease provide insight for the Court. It

would also be fair to permit Mr. Hartranft an opportunity to rebut the positions taken by HLI and

its reviewers.

This is not a case such as <u>Muller v. First Unum Life Ins. Co.</u>, 341 F.3d 119, 125 (2nd Cir.

2003), where the insurance company gave the plaintiff "ample time to submit additional

materials. Rather, this is a case in which the reviewers entirely ignored substantial evidence of

record and went off on a tangent of their own which Mr. Hartranft could not have anticipated and

should be allowed to respond.

In the case at bar, it may even be necessary to reconsider whether the Plan Administrator

was already aware that Mr. Hartranft was totally disabled while he was still employed at HSB,

and has a fiduciary obligation to assist him in obtaining benefits.

## CONCLUSION

For all of the forgoing reasons, the Court should make a ruling, *in limine*, that it will

review this claim de novo and that it will allow the plaintiff to submit additional evidence that he

became disabled under the meaning of the Plan while he was an employee of HSB.

RESPECTFULLY SUBMITTED,
PLAINTIFF

By _____
Judith D. Meyer
Fed Bar No.: CT04976
152 Simsbury Road
P.O. Box 451
Avon, CT 06001-0451
Tel. (860) 678-7711
Fax (860) 677-6832
e-mail: judithdmeyer@igc.org
HIS ATTORNEY

## CERTIFICATION

This is to certify that a copy of the foregoing was sent via first-class mail, postage prepaid, this 20th day of November, 2003, to the following counsel of record:

Michael G. Durham, Esq.
Delaney, Zemetis, Donahue,
    Durham & Noonan, P.C.
741 Boston Post Road, Suite 306
Guilford, CT 06437

Felix J. Springer, Esq.
Day, Berry & Howard, LLP
City Place I
Hartford, CT 06103-3499

Judith D. Meyer