### Statement of ERISA Rights

You are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all plan participants shall be entitled to:

(1) Examine, without charge, at the plan administrator's office and at other locations (work-sites and union halls), all plan documents, including insurance contracts, collective bargaining agreements and copies of all documents filed by the plan with the U.S. Department of Labor, such as annual reports and plan descriptions.

(2) Obtain copies of all plan documents and other plan information upon written request to the plan administrator. The administrator may make a reasonable charge for the copies.

(3) Receive a summary of the plan's annual financial report. The plan administrator is required by law to furnish each participant with a copy of this summary financial report.

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

If your claim for a welfare benefit is denied in whole or in part you must receive a written explanation of the reason for the denial. You have the right to have the plan reviewed and reconsider your claim. Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request materials from the plan and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the plan administrator to provide the materials and pay you up to $100 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator.

If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

If you have any questions about your plan, you should contact the plan administrator. If you have any questions about this statement or about your rights under ERISA, you should contact the nearest Area Office of the U.S. Labor Management Services Administration, Department of Labor.

**Claim Procedures**

1. Claims for Benefits – An employee wishing to present a claim for benefits for himself or his insured dependents should obtain a claim form or forms from his Employer or Administrator. The applicable section of such form or forms should be completed by (1) Employee, (2) Employer or Administrator and (3) Attending Physician or Hospital.

    Following completion, the claim form or forms should be forwarded to the individual authorized to process and pay claims (Administrator or Insurance Company's Claim Representative). The individual authorized to process and pay the claims will compute benefits due, and will issue draft(s) in settlement. Unless the employee assigns benefits to a doctor or to a hospital, draft(s) will be made payable to the employee.

    A decision will be made by the Insurance Company no more than 90 days after receipt of due proof of loss, except in special circumstances (such as the need to obtain further information), but in no case more than 180 days after the due proof of loss is received. The written decision will include specific reasons for the decision and specific references to the plan provisions on which the decision is based.

28

2. Appealing Denial of Claims – If a claim for benefits is wholly or partially denied, notice of the decision shall be furnished to the employee. This written decision will:
   (a) give the specific reason or reasons for denial;
   (b) make specific reference to policy provisions on which the denial is based;
   (c) provide a description of any additional information necessary to prepare the claim and an explanation of why it is necessary; and
   (d) provide an explanation of the review procedure.

On any denied claim an employee or his representative may appeal to the Insurance Company for a full and fair review. The claimant may:
(a) request a review upon written application within 60 days of receipt of claim denial;
(b) review pertinent documents; and
(c) submit issues and comments in writing.

A decision will be made by the Insurance Company no more than 60 days after receipt of the request for review, except in special circumstances (such as the need to hold a hearing), but in no case more than 120 days after the request for review is received. The written decision will include specific reasons for the decision and specific references to the plan provisions on which the decision is based.




October 10, 1997

Ms. Jodi Lussier
Manager, Benefits Administration
The Hartford Steam Boiler Inspection and Insurance Co.
One State Street
Hartford, CT 06102

Re: Long Term Disability Coverage Summary

Dear Jodi:

I would like to take this opportunity to summarize the series of events surrounding The Hartford's proposal to convert HSB's current self-administered Long Term Disability coverage to a fully insured contract on January 1, 1998. In addition, I've outlined the circumstances surrounding the proposal to buy-out the current HSB LTD claims.

## LTD Fully Insured Quotation

Confirming the plan design and cost quoted for the fully insured contract proposed for January 1, 1998:

| | |
|---|---|
| Benefit Percentage | |
|   Core Plan | 60% |
|   Buy-Up | 70% |
| Elimination Period | 180 Days |
| Duration | ADEA I |
| Integration (Prim/Fam) | Family |
| Disability Definition | 2 Yr. Own/Any Thereafter |
| Maximum Monthly Benefit | $15,000 |
| Minimum Monthly Benefit | $100 |
| Pre-Existing Condition | 180/365 |
| Mental/Nervous Limit | 24 Months Outpatient |
| Survivor Income | Not Included |
| No Loss/No Gain | Included |
| Partial/Residual | Residual |
| Conversion | Not Included (+ $.01) |
| Contributions | |
|   Core | 100% Employer Paid |
|   Buy-Up | 100% Employee Paid (Pre-Tax?) |
| Commissioned Salespeople | Not Included |
| COLA | 3%/5 Adjustments |

A standard Hartford contract will be issued for this coverage.

Group Sales Department
Hartford Regional Office
15 Farmington Avenue
Hartford, CT 06105
860-520-1600
860-520-2291 Fax

Mailing Address: P.O. Box 2902

**EXHIBIT**
Plf 27 (DZ)
DPA 9/30/03

Ms. Jodi Lussier
October 10, 1997
Page 2

The rate for the non-contributory Core plan is $.49/$100. Based on a covered payroll of $6,327,668, the approximate monthly premium will be $31,000.

The rates for the Buy-up plan are as follows:

| Age | 70% Plan<br>Per $100 of Total<br>Covered Payroll |
|---|---|
| <35 | $ .36 |
| 35-39 | .47 |
| 40-44 | .86 |
| 45-49 | 1.11 |
| 50-54 | 1.35 |
| 55-59 | 1.61 |
| 60-64 | 1.86 |

This contract is a non-participating, pooled arrangement. Future pricing will be done prospectively based on actual experience.

Buy-Out

Our buy-out quote of $2,150,000 was calculated using the list of 34 claimants supplied to us by you in July. Basically, this quote represents the present value of future claims and expenses. We used the following assumptions:

Expenses

4% (This includes the 2% premium tax)

Interest Rate

5.5%

Reserves for known claims

These were calculated using the 1987 commissioner's Actuarial table, and modified considerably by our own experience (e.g. our assumptions are generally more aggressive than the 1987 table).

Ms. Jodi Lussier
October 10, 1997
Page 3


COLA

We used all the COLA increases which have been granted through April 1st, 1997. (We suspect that this is one of the main differences between our estimate and Towers'.) We also quoted additional charges for future COLA's which HSB may choose to implement. These were:

    A.  $250,000 for up to a 6% COLA every three years (rolling); and

    B.  $222,000 for up to a 6% COLA every five years (rolling).

IBNR

Our proposed figures did not include reserves for claims not reported. We gave you the option of waiting 10-12 months after the takeover to do a final pricing of all the revealed claims. Or, in order to commit now (and thus not do that accounting) we would charge an extra $508,008.

It is our understanding, Jodi, that you would prefer to have a final accounting prepared toward the beginning of the 3rd quarter of 1998 versus including the $508,008 in the total buy-out cost. The way in which this will work is we will designate a specific time, preferably at the end of the third quarter of '98 to allow for the 6 month elimination period plus a couple of months reporting lag, and value any new claims at that time. At that point, we will, in effect, do a second buy-out of claims.


ASO Charge/Fees

The current monthly ASO fee structure (i.e. $.75/ee) will discontinue beginning January 1, 1998. When the final accounting is done, we will include the appropriate costs associated with any new claims. For example, should one additional claim emerge, we will include a charge of $550 (New Claim), $8 (Per Check) as well as any Rehab/SS hourly expenses that may have been incurred.

We also discussed what could be done to effectively lower the cost of the buy-out at this time. In speaking with our actuary, he feels the only change which would impact the cost to any extent, other than eliminating the COLA provision entirely, would be to lower the annual COLA increase (below 6%) and limit the COLA increases to a specified period of time. As an example, 4% every 3 years, for a

Ms. Jodi Lussier
October 10, 1997
Page 4

maximum of 15 years, as apposed to 4% every 3 years indefinitely. If you are interested in pursuing any of these options, please let me know and I will see what type of decrement can be determined.

I hope you find that I have addressed all the issues we've discussed over the last several months. If you feel there is anything I have overlooked or misstated, please call me to discuss and I will be happy to address them.

Sincerely,

Merily B. Tine
Account Executive - Services

MBT/tbm

C: Mr. John F. O'Connell, Jr., CEBS
   Managing Partner, C.M. Smith Agency, Inc.

## RIDER

This Rider is attached to and made a part of Group Policy No. **GLT-208185** issued by the HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY to the POLICYHOLDER,

### HSB GROUP, INC.

It is understood and agreed that the policy is hereby amended with the addition and deletion of the following forms:

| Forms Added | Forms Deleted |
|---|---|
| PI-3.19 Rev. Eff. 1-1-98 | PI-3.19 |

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, or provisions of the policy, other than as herein stated.

This rider is signed by the HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY to take effect as of **January 1, 1998**

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY

*Lynda Godkin*

Lynda Godkin, *Secretary*

*Lowndes A. Smith*

Lowndes A. Smith, *President*

Countersigned by ................................................................
Licensed Resident Agent

EXHIBIT
Dft 38
DEH 9/30/03

GR-11384-HLA

## INCORPORATION PROVISION

**Booklet-Certificate**

The Booklet-certificate(s), and the endorsement form(s) enclosed therein, attached to this Policy are hereby incorporated in, and made a part of, this policy.

Booklet-certificate Form:
BC-208185 (GLT)

Endorsement Form:
GR-2025(496)A-HLA 208185 (GLT) (A)
GR-2025(496)A-HLA 208185 (GLT) NC
GR-2025(496)A-HLA 208185 (GLT) AK
GR-2025(496)A-HLA 208185 (GLT) CA
GR-2025(496)A-HLA 208185 (GLT) MO
GR-2025(496)A-HLA 208185 (GLT) NH
GR-2025(496)A-HLA 208185 (GLT) NJ
GR-2025(496)A-HLA 208185 (GLT) NY
GR-2025(496)A-HLA 208185 (GLT) OK
GR-2025(496)A-HLA 208185 (GLT) PA
GR-2025(496)A-HLA 208185 (GLT) VT
GR-2025(496)A-HLA 208185 (GLT) VA
GR-2025(496)A-HLA 208185 (GLT) WI
GR-2025(496)A-HLA 208185 (GLT) MA
GR-2025(496)A-HLA-DISC

The terms found in the Booklet-certificate(s) will control:

(1) the benefit plan provisions, amounts and maximum limits;
(2) applicable coinsurance percentage(s);
(3) the eligibility and effective date of insurance rules;
(4) the termination of insurance rules;
(5) exclusions; and
(6) other general policy provisions pertaining to state insurance law requirements.

GR-11383-HLA(3)　　　　　　　　Rev. Eff. 1/1/98　　　　　　　　PI-3.19