UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT M. HARTRANFT, JR. : | |
| : | CIVIL ACTION NO. |
| : | 3:01CV1870 (GLG) |
| v. : | |
| : | |
| HARTFORD LIFE & ACCIDENT : | DECEMBER 24, 2003 |
| INSURANCE COMPANY, ET AL : | |

## DEFENDANT HARTFORD LIFE & ACCIDENT INSURANCE COMPANY'S OBJECTION TO PLAINTIFF'S MOTION IN LIMINE

This ERISA action arises out of the denial of the plaintiff's application for long-term disability ("LTD") benefits under a group insurance policy ("the Policy") issued by defendant Hartford Life & Accident Insurance Company ("Hartford") to the plaintiff's former employer, co-defendant HSB Group, Inc. ("HSB").

The plaintiff alleges that he became totally disabled from Parkinson's Disease in February, 1999.[1] By Amended Complaint dated April 10, 2002, the plaintiff claims that Hartford wrongfully denied his LTD Application, in violation of ERISA and that co-defendant HSB wrongfully failed to review the plaintiff's LTD Application.

---

[1] The defendants strongly deny that the plaintiff became disabled while employed by HSB. In fact, the administrative record establishes that the plaintiff was informed weeks before he claims he became disabled that his HSB employment was being terminated because his job was being eliminated and further that plaintiff did not seek any treatment for his Parkinson's Disease for a period of 15 months beginning a month before he stopped working.

The plaintiff, by way of Motion In Limine dated November 20, 2003, requests this Court to review Hartford's benefit determination *de novo* and to permit the admission of evidence beyond the administrative record. To the contrary, Hartford Life asserts that the Court should review Hartford's benefit determination under the arbitrary and capricious standard and that no evidence beyond the administrative record should be permitted.

As discussed herein, the Motion In Limine should be denied for the following reasons: (1) As of the time the plaintiff's LTD claim was denied, the Policy contained an Endorsement conferring discretionary authority on Hartford to determine eligibility for benefits and to interpret the coverage provisions; (2) The Policy also contained other provisions clearly conferring such discretionary authority; (3) No conflict existed between the Plan documents and HSB's Summary Plan Description ("SPD"); and as Hartford was expressly authorized to amend the Policy (after twelve months), it did so to include the Endorsement conferring discretionary authority; (4) The Endorsement was a procedural amendment which did not substantively change benefits to the Plan and therefore the plaintiff's vesting analysis is irrelevant to the standard of review; (5) Co-defendant HSB's alleged failure to provide the plaintiff a copy of the Endorsement after his employment was terminated does not influence the standard of review to be applied by the Court; (6) Despite conducting discovery, the plaintiff has not identified any conflict of interest that in any way influenced Hartford's determination on the plaintiff's LTD claim; and (7) The plaintiff had

ample opportunity to submit materials in support of his LTD Application both initially and during the appeal process.

As a matter of law, then, this Court should review the benefit determination by Hartford denying the plaintiff's LTD Application under an "arbitrary and capricious standard" without the admission of any evidence beyond the administrative record.

## I.    STATEMENT OF FACTS

### A.    Co-Defendant HSB's Employees' Disability Plan

Plaintiff was employed by co-defendant HSB from 1996 until he was laid off effective March 1, 1999 (November 13, 2003 Affidavit of Robert M. Hartranft, Jr., ("Hartranft Affidavit") attached as Exhibit A to Plaintiff's Motion In Limine, ¶¶ 5, 14). During his employment as a project manager for HSB, the plaintiff was a participant in HSB's Employees' Disability Plan ("the Plan"), an employee welfare benefit plan governed by ERISA. Under the Plan, a copy of which is attached hereto as Exhibit A, HSB's Disability Committee was empowered with "sole discretion to determine whether a particular situation is intended to be covered by the Plan", Exhibit B, p. HSB0126, and long-term disability benefits were to be "determined in accordance with the terms of the group insurance policy in effect between HSB and The Hartford Life & Accident Insurance Company effective January 1, 1998". See Exhibit B, p. HSB0130. As such, the Policy was "incorporated into this Plan" and governed the determination of LTD claims by HSB employees, like the plaintiff.

3

As part of HSB's employee handbook entitled "Making Tracks", HSB distributed to its employees a Summary Plan Description ("SPD") which served to describe the benefit plans to employees. Exhibit C at p. 13. The handbook, however, makes clear that the descriptions therein are only summaries and were not meant to supersede the Plan documents.

### B.     The Policy

The Policy, a copy of which is attached hereto as Exhibit B, contains the following language expressly conferring discretionary authority on Hartford to make benefit eligibility determinations:

**Who interprets policy terms and conditions?**

Hartford has full discretion and authority to determine the eligibility for benefits and to construe and interpret all terms and provisions of the group insurance policy.

See Exhibit D, March, 1999 Policy Endorsement and Incorporation Provision.

In addition, the Policy contained the following provisions which conferred discretionary authority to Hartford:

**DISABILITY BENEFITS**

**When do benefits become payable?**

You will be paid a monthly benefit if:

(5) you submit proof of loss satisfactory to The Hartford.

See Exhibit B at p. 15.

4

*****

## GENERAL PROVISIONS

> The Hartford reserves the right to determine if your proof of loss is satisfactory.

See Exhibit B at p. 21.

*****

## ERISA

13. **Plan Amendment Procedure**

> The Plan Administrator reserves full authority, at its sole discretion, to terminate, suspend, withdraw, reduce, amend or modify the plan, in whole or in part, at any time, without prior notice.

See Exhibit B at p. 26

### C.     The Plaintiff's LTD Application

In or about November, 2000, the plaintiff applied for LTD benefits under the Policy claiming that he was totally disabled as of the end of February, 1999 due to Parkinson's Disease.

### D.     Denial of Plaintiff's LTD Application

By letter dated February 8, 2001 ("Denial") (Exhibit E hereto), Hartford Examiner Lisa Lavallee notified the plaintiff that his LTD Application had been denied.  In the Denial, Ms. Lavallee discussed at length the information reviewed in making the benefit

determination and noted that "the medical evidence submitted in support of your claim for benefits does not establish that you meet the policy definition of Total Disability through and beyond the Elimination Period. Accordingly, LTD benefits are not payable to you under the terms of this policy." Exhibit E, first paragraph.

### E.    Plaintiff's Appeal of Denial of LTD Application

By his counsel's April 7, 2001 letter ("Appeal"), the plaintiff appealed Hartford's denial of his LTD Application. In the Appeal, Attorney Meyer reasserted that the plaintiff's doctors' notes submitted with his LTD Application support that the plaintiff was totally disabled by January, 1999. Attorney Meyer's letter also produced the following additional materials for Hartford's consideration:    (1) work and medical records related to the plaintiff's fall on October 22, 1998; and (2) affidavits by the plaintiff, his wife, his son, his supervisor at HSB (Bernd Selig) and his manager at HSB (Richard Williams).

### F.    Denial of Plaintiff's Appeal

On August 1, 2001, Hartford Appeals Specialist Robert R. Dombrowski, Jr. sent to plaintiff's attorney a letter ("Appeal Denial") (Exhibit F hereto) notifying her that Hartford had upheld its original denial of the plaintiff's LTD Application. In the Appeal Denial, Mr. Dombrowski discussed in detail the rationale for concluding that, based on the information

provided by the plaintiff as well as information already in the claim file, the plaintiff was

not Totally Disabled under the Policy.[2]

## II.    LEGAL ARGUMENT

### A.    The Court Should Review Hartford's Benefit Determination Under An Arbitrary And Capricious Standard Of Review

#### 1.    The March, 1999 Policy Endorsement Expressly Conferred Discretionary Authority On Hartford.

The United States Supreme Court held, in <u>Firestone Tire & Rubber

Co. v. Bruch</u>, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), that an

administrator's decision to deny benefits must be reviewed de novo *unless the plan gives the*

*administrator discretionary authority to determine eligibility for benefits.* See, also, <u>Larsen

v. Prudential Ins. Co. of America</u>, 151 F. Supp. 2d 167, 171 (D. Conn. 2001). A court may

not overturn an ERISA plan administrator's decision, however, where the administrator has

discretionary authority to construe the terms of the plan, unless the decision is "arbitrary

and capricious". <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 114 (1989); <u>O'Shea

---

[2] For example, according to the Hartranft Affidavit, the plaintiff knew in December, 1998 his job was being eliminated. Thereafter, the plaintiff received a January 25, 1999 Memorandum (Exhibit G hereto) outlining the terms of his separation from employment with HSB, and informing him that his last day would be March 1, 1999. Also, medical reports in the administrative record show that some seven months <u>after</u> the plaintiff alleges he became totally disabled, he fractured his lower back when he fell from a tree while using a chain saw to cut dead limbs. In this regard, Mr. Dombrowski pointed out that "In fact, his activities of tree climbing and removing branches with a chain saw demonstrate significant physical capabilities at that time". <u>See</u> Exhibit F at p. 3, second paragraph.

7

v. First Manhattan Co. Thrift Plan & Trust, 55 F.3d 109, 112 (2d Cir. 1995); Pagan v.

NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995); Brunoli v. Brunoli & Sons, Inc.

Pension Plan, 993 F. Supp. 66, 72 (D. Conn. 1997).

Here, the Plan clearly reserved discretion to determine employee eligibility for LTD

benefits ("The disability committee has sole discretion to determine whether a particular

situation is intended to be covered by the Plan," Exhibit A at 2) and the Policy expressly

provided that:

> **Who interprets policy terms and conditions?**
>
> Hartford has full discretion and authority to
> determine the eligibility for benefits and to construe
> and interpret all terms and provisions of the group
> insurance policy.

See Exhibit D.

This language had been added to the Policy by an Endorsement in March, 1999,[3]

more than eighteen months before the plaintiff filed his November, 2000 LTD Application

and almost two years before Hartford issued its February, 2001 benefit determination.

Clearly, then, consistent with the mandate of Firestone, the Policy conferred full

---

[3] Effective January 1, 1998, HSB moved from a self-funded to a fully funded LTD Policy and it was the intent
of HSB and Hartford – as evidenced by the policy provisions cited in Section II(A)(1) hereinabove – to confer
full discretionary authority on Hartford.  The Policy did not actually contain the express discretionary
authority language when it first became effective on January 1, 1998 due to an inadvertent computer system
error.  See Exhibit H, Deposition of Antoinette Adamowicz, Business Manager at Hartford in March, 1999, p.
14.  The language was added to the Policy by the March, 1999 Endorsement when the printing omission was
discovered.

discretionary authority on Hartford and consequently Hartford's decision denying the plaintiff's claim for LTD benefits should be reviewed under the arbitrary and capricious standard. <u>Dobson v. Hartford Financial Servs.</u>, 196 F. Supp. 2d 152, 158 (D. Conn. 2002). Indeed, the plaintiff appears to concede in his own pleadings that "arbitrary and capricious" is the proper standard of review. <u>See</u> Amended Complaint, ¶ 22 (alleging that Hartford's denial of benefits was arbitrary and capricious).

In his Motion In Limine, the plaintiff argues that the Court should review his claim *de novo* because the Endorsement language providing Hartford with discretionary authority to determine eligibility was not a part of the Policy when Hartranft allegedly became disabled in February, 1999. However, contrary to the plaintiff's argument, both the date Hartranft allegedly became disabled and the date he filed his LTD Application are of no relevance in determining the appropriate standard of review to be applied by the Court. Instead, as discussed below, it is well settled that the ERISA plan language that is controlling in this regard is the language that is in effect *at the time the benefit determination was made.*

In <u>Grosz-Salomon v. Paul Revere Life Insurance Company</u>, 237 F. 3d. 1154 (9th Cir. 2001), the policy which lacked the necessary language to confer discretion when initially issued in August, 1992 was amended fourteen months later in October, 1993 to give Paul Revere "full, final, conclusive and binding power to construe and interpret the policy ... in order to make claim determinations." Between the original policy issuance and

the October 1993 amendment, the plaintiff became disabled and filed a September 1, 1993 LTD claim. When Grosz-Salomon sued over Paul Revere's determination that she was not disabled within the meaning of its policy, the Court concluded that the provisions of the amended policy applied despite the fact that Grosz-Salomon had applied for LTD benefits prior to the amendment's effective date. The Grosz-Salomon Court held that the fact "that she became permanently disabled and filed her disability claim when the first policy was in effect is irrelevant; it does not entitle her to invoke that plan's provisions in perpetuity." Id. at 1160.

In Armstrong v. Liberty Mutual Life Assurance Co. of Boston, et al, 273 F. Supp. 2d 395 (S.D.N.Y. 2003), the plaintiff sued the defendant insurer for violations of ERISA after the defendant determined that the plaintiff was no longer eligible to receive long term disability benefits. The defendant had paid benefits to the plaintiff beginning in 1994 under a policy that became effective in 1992. In 1997, the defendant issued an amended policy, and in 2001, it terminated the plaintiff's benefits. In examining the policy language to determine whether it conferred sufficient discretionary authority to justify use of the arbitrary and capricious standard of review, the court held that the 1997 policy was the applicable one, even where the plaintiff's benefits had originally been paid under the 1992 policy. Id. at 403.

Similarly, in Smathers v. Multitool, Inc./Multiplastics, Inc. Employee Health and Welfare Plan, 298 F. 3d 191 (3rd Cir. 2002), an employer refused to pay its employee's

10

medical expenses arising out of an accident, in which the employee was operating his motorcycle while intoxicated. The denial was based on a provision in the employee policy which excluded from coverage any medical charges caused by the covered person's commission or attempted commission of a felony, misdemeanor or illegal activity. In February, 1998, while Smathers' claim was pending, Multitool amended its plan to incorporate a provision into the policy giving the administrator discretionary authority to make benefits determinations. When Multitool denied Smathers' claim for disability, he brought suit pursuant to ERISA and the District Court determined that the administrator's decision denying Smathers' application for benefits was governed by the discretionary authority provision under the 1998 plan and was not *"arbitrary and capricious."* Smathers appealed arguing that the District Court improperly reviewed the administrator's decision under an *"arbitrary and capricious"* standard instead of under the *de novo* standard, which would have been applicable under the plan in effect when his claim arose and when he filed his claim.

In upholding the District Court's decision that the plan in effect when the administrator denied Smathers' application for benefits, not the plan in effect when Smathers became disabled and filed his claim, the Third Circuit Court held that:

> "Procedural provisions of a plan such as this, containing a grant of discretionary authority to the administrators, are not implicated until the administrator actually exercises that authority. We therefore look to the plan in effect at the time benefits were denied, the 1998 plan, and, as a result,

11

> we will examine the administrator's determination using
> the arbitrary and capricious standard of review." Id. at 197
> citing Blessing v. Deere & Co., 985 F. Supp. 899, 903
> (S.D. Iowa 1997).

In Blessing v. Deere and Company, 985 F. Supp 889 (S.D. Iowa 1997), the plaintiff

challenged the denial of spousal benefits under the ERISA Pension Plan of her deceased

common law husband. The Pension Plan in effect at the time Blessing's common law

husband died did not give the administrator discretionary authority to determine eligibility

benefits or to construe the Plan's terms. The Plan, however, was amended prior to

Blessing's application for surviving spouse benefits to state: "To the extent permitted by

law, an interpretation of the Plan and/or a decision on any matter within the administrator's

discretion made in good faith is binding on all participants, beneficiaries and persons." Id.

at p. 902. Under these circumstances, the Blessing Court held that an "ERISA cause of

action based on a denial of benefits accrues at the time the benefits are denied", Blessing,

985 F.Supp at 903, citing Mason v. Aetna Life Ins. Co., 901 F. 2d 662, 664 (8th Cir. 1990);

Kiefer v. Cridian Corp., 976 F. Supp. 829, 840-841 (D. Minn. 1997); Podolan v. Aetna Life

Ins. Co., 909 F. Supp. 1378, 1384-85 (D. Idaho 1995), and that applying the abuse of

discretion standard was appropriate since the Policy contained the discretionary language at

the time her claim was denied. See also, Bolton v. Construction Laborers' Pension Trust for

So. Cal., 56 F.3d 1055, 1058 (9th Cir. 1995) (holding that under ERISA, a widow's cause of

action for spousal benefits accrued when she was denied those benefits); Menhorn v.

12

Firestone Tire & Rubber Co., 738 F.2d 1496, 1501 (9th Cir. 1984) (pensioner's ERISA cause of action arose when he applied for and was denied benefits).

Finally, in Podolan v. Aetna Life Ins. Co., 909 F. Supp. 1378 (D. Idaho 1995), the plaintiff became disabled in 1981 and after Aetna approved her LTD application in 1982, she received disability benefits until 1993, when Aetna terminated them. Although the policy in effect in 1981 (the first policy) did not confer discretion, the policy in place in 1993 (the second policy) did so. The Podolan Court concluded that the second policy applied for purposes of the proper standard of review: "The instant action focuses on whether the plan administrator acted improperly in terminating benefits to plaintiff in 1993. It was in 1993 when the claim for wrongful termination of benefits arose and it is the plan administrator's acts in 1993 that are being reviewed by the Court. Therefore, the Court concludes that it is the 1988 Plan governing the administrator's conduct in 1993 that must be considered in determining the scope of review over the administrator's decision." Id. at 1383; See also Bolton v. Construction Laborers' Pension Trust, 56 F.3d 1055, 1058 (9th Cir. 1995) (the court held that "in cases where benefits are denied as the result of a significant act of discretion under or interpretation of the plan ... the date of the act or omission is the date on which the plan provision at issue is applied to the individual.".)

In the instant case, the Policy was amended to include the March, 1999 Endorsement conferring full discretion on Hartford not only prior to Hartford's February, 2001 decision denying Hartranft's LTD Application, but also prior to Hartranft's

13

November, 2000 submission of his Application.  Under the well established law discussed hereinabove, then, it is beyond question that the Endorsement language was in effect and consequently the Court should review Hartford's denial under the arbitrary and capricious standard.

     2.     **The Original Language In The Policy Conferred Discretionary Authority.**

In order to confer discretionary authority on the plan administrator, a policy need not expressly use the words "discretionary authority."  See Perez v. Aetna Life Insurance Co., 150 F.3d 550, 555 (6th Cir. 1998) (en banc).  In Larsen v. The Prudential Insurance Company Of America, 151 F. Supp. 2d 167 (D. Conn. July 17, 2001) (Goettel, J.), this Court held that the policy language at issue granted the defendant insurer the authority to determine eligibility for benefits and construe the terms of the plan by using the phrases "when Prudential determines" and "when Prudential decides" in sections discussing eligibility for coverage and benefits.  Larsen 151 F. Supp. at 171.  See also, Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995) (holding that the phrase, "shall determine conclusively," in the plan document granted the defendant discretion to make eligibility decisions and to construe the terms of the plan); Kocsis v. Standard Ins. Co., 142 F. Supp. 2d 241, 251 (D. Conn. 2001) (concluding that the language "... Standard reserves to itself [t]he right to determine:  (a) Your eligibility for insurance; (b) Your entitlement to benefits..." was sufficient to reserve discretion to defendant); Kiley v. Travelers Indem. Co.

14

of Rhode Island, 853 F.Supp. 6 (D. Mass. 1994) (concluding that language in the plan stating, "as determined by the Company," conferred discretion to determine eligibility for benefits and supported use of the arbitrary and capricious standard); Donato v. Metropolitan Life. Ins. Co., 19 F. 3d 375, 379 (7th Cir. 1994) (policy which stated that plan insurer would provide disability benefits "upon receipt of proof ... satisfactory to us" required the reviewing court to grant deference to insurer's decision to deny Plaintiff's claim for benefits); Magee v. Life Ins. Co. of North America, 2003 WL 21000847 (S.D. Texas, April 22, 2003) ("'satisfactory proof' language ... grants LINA discretion to determine eligibility for benefits").

Here, then, even if this Court were to disregard the Endorsement entirely, which it should not, the language in the Policy – prior to the March, 1999 Endorsement – contained ample language to confer discretionary authority on Hartford:

*****

### DISABILITY BENEFITS

#### When do benefits become payable?

You will be paid a monthly benefit if:

(5) you submit proof of loss satisfactory to The Hartford.

See Exhibit B at p. 15.

*****

15

### GENERAL PROVISIONS

#### When must proof of a Disability be given?

The Hartford reserves the right to determine if your
proof of loss is satisfactory.

See Exhibit B at p. 21.

The language in the Policy, much like the policy language at issue in <u>Larsen</u>, clearly

and unequivocally conferred discretion on Hartford and as such the Court should review

Hartford's benefit determination against the arbitrary and capricious standard.

3. **There Is No Conflict Between HSB's Summary Plan Description And
The Plan; And Hartford Was Authorized To Amend The Policy**

The plaintiff next asserts that HSB's Summary Plan Description (hereinafter,

"SPD") is controlling here because of a conflict allegedly existed between the SPD and the

Plan as to whether the Plan could be amended by Hartford; and he in turn seems to argue

that, because the SPD does not expressly authorize Hartford to amend the Policy, Hartford's

March, 1999 Endorsement was ineffective. In fact, however, although some courts do treat

an SPD as controlling if the SPD <u>conflicts</u> with the underlying disability policy, "this rule

of construction should not be invoked if no direct conflict exists or if the SPD is silent on an

issue that is described in the underlying policy". <u>Communication Workers of America, et al</u>

<u>v. NYNEX Corp.</u>, et al, 205 F. Supp. 2d 224, 227 (S.D.N.Y. 2002) (citations omitted).

Here, then, there is no conflict because, while the Policy provides that Hartford may amend

or change the Policy by notifying HSB, Exhibit B at p. PI.7.11, the SPD is merely <u>silent</u> on

16

this issue.  In this regard, see, also, <u>Utah Alcoholism Foundation v. Battelle Pacific Northwest Laboratories,</u> 204 F. Supp. 2d 1295 (D. Utah 2002), in which the plaintiff argued that a conflict existed between the Plan and the SPD where the Plan was amended to include discretionary language which was not likewise incorporated into the SPD.  The Court held "that there is no requirement that the discretionary language must appear in the SPD.  Since the Plan Document conferred discretion upon the Plan Administrator to determine eligibility for benefits and to construe the terms of the plan, the arbitrary and capricious standard of review applies to plaintiffs' claim for recovery of benefits." <u>Id.</u> at 1302.  <u>See also</u> <u>Charter Canyon Treatment Ctr. v. Pool Co.</u>, 153 F.3d 1132 ("A summary plan description which is silent on a specific term or issue cannot prevail over the master plan document.").

The plaintiff also attempts to argue that the Policy  was not properly amended by Hartford in March, 1999 because the amendment was not approved by a Senior Officer of HSB.  <u>See</u> Exhibit A at p. HSB0131.  This argument simply ignores other pertinent language in the Plan documents.   Specifically, the Policy provides as follows: "Notwithstanding the above, after the policy has been in force for 12 months, The Hartford may change any or all of the policy's provisions by notifying the Policyholder."  The Policy first became effective as of January 1, 1998 (Exhibit B) and fourteen months later, as verified by Hartford Life's March 22, 1999 letter to HSB (Exhibit I hereto) and the deposition of Hartford Antoinette Adamowicz (Exhibit H at p. 7-8), the Policy was properly

17

amended to include the Endorsement. Discretionary authority was thereby expressly conferred on Hartford long before the plaintiff asserted a short-term disability claim, let alone his eventual LTD Application.

Further, the Endorsement merely altered the procedural rights under the Plan and did not affect Hartranft's substantive rights at all. As such, the fact that the plaintiff may not have received notice of the Endorsement does not give rise to the plaintiff having any substantive rights against Hartford. See Smathers v. Multi-Tool, Inc., 298 F.3d 191, 195-196 (3rd Cir. 2002) (concluding that since the plan amendment was procedural rather than substantive, the plan in effect at time benefits were denied will determine the standard of review.) See also Dames v. Paul Revere Life Insurance Company, 49 F. Supp. 2d 1194, 1201 (D. Oregon 1999) ("Lack of notice is insufficient to warrant invalidating the 1996 policy. 'Generally substantive remedies are not available under § 1132(a) for violations of ERISA's procedural requirements without a showing of 'some significant reliance on, or possible prejudice flowing from these reporting and disclosure violations.' " quoting Boucher v. Williams, 13 F Supp 2d 84, 99 (D. Me. 1998) quoting United Paperworkers Int'l Union, Local 14 v. International Paper Co., 777 F.Supp. 1010, 1019 (D. Me. 1991) and citing Ackerman v. Warnaco, Inc., 55 F.3d 117, 124 (3rd Cir. 1995); Kreutzer v. A.O. Smith Corp., 951 F.2d 739, 743 (7th Cir. 1991); Berger v. Edgewater Steel Co., 911 F.2d 911, 921 (3rd Cir. 1990).

18

**4.**     **The Plaintiff Was Not Vested In Long Term Disability Benefits Under The Plan.**

The plaintiff improperly relies on Feifer v. Prudential Ins. Co. of America, 306 F. 3d 1202 (2d Cir. 2002) to argue that he somehow became vested in the LTD benefits when he allegedly became disabled in February, 1999, thereby precluding Hartford from amending the Plan in March, 1999.[4]  The general rule under ERISA is that "an employee welfare benefit plan is not vested and that an employer has the right to terminate or unilaterally to amend the plan at any time". Joyce v. Curtiss-Wright Corp., 171 F. 3d 130, 133 (2d Cir. 1999) (citations and internal quotation marks omitted).[5]  The Second Circuit articulated a limited exception to this general rule in Feifer v. Prudential Ins. Co. of America, 306 F. 3d 1202 (2d Cir. 2002), by holding that "a benefit becomes 'vested' if the employer has promised not to amend or terminate it, and the employee has accepted this offer by beginning or continuing in

---

[4] As state hereinabove, even assuming, arguendo, that the Endorsement was ineffective, the Policy contains ample other language conferring discretionary authority to Hartford.

[5] See also American Fed'n of Grain Millers v. International Multifoods Corp., 116 F.3d 976, 979 (2d Cir. 1997) ("Unlike pension plan benefits, the benefits provided by a welfare plan generally are not vested and an employer can amend or terminate a welfare plan at any time") (citing Inter-Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry. Co., 520 U.S. 510, 515, 117 S.Ct. 1513, 137 L.Ed.2d 763 (1997)); Doe v. Group Hospitalization & Medical Servs., 3 F.3d 80, 84 (4th Cir. 1993) ("[h]ealth care benefits provided in an employee benefit plan are not vested benefits; the employer may modify or withdraw these benefits at any time, provided the changes are made in compliance with ... the terms of the plan"); West v. Greyhound Corp., 813 F.2d 951, 954 (9th Cir. 1987) ("There is no language in ERISA which provides for the accrual of welfare benefits or guarantee[s] that such benefits are vested or nonforfeitable."). An employer may contractually limit its ability to modify a welfare plan, or bind itself not to discontinue or reduce existing welfare benefits, but ERISA imposes no such obligation.  In the absence of such a contractual promise, therefore, welfare benefits simply do not vest. See American Fed'n of Grain Millers, 116 F.3d at 982 ("if an employer has not promised vested benefits in a SPD, and the employer expressly reserves the right to terminate the plan in the SPD, benefits promised in the SPD are not vested").

19

employment". <u>Id.</u> at 1211 (citations omitted) (emphasis added).  The <u>Feifer</u> Court also held

that, "absent explicit language to the contrary, a plan document providing for disability

benefits promises that these benefits vest with respect to an employee no later than the time

that the employee becomes disabled". <u>Id.</u> at 1212 (emphasis added).  <u>Feifer</u>, then, stands for

the proposition that, where a plan beneficiary has become disabled such that the individual's

benefits under the plan vest, the plan administrator cannot amend the plan in a way that affects

the individual's substantive benefits.[6]  Where, however, as here, the amendment to the plan

does not change the substance of the employee's benefits, but is merely procedural in nature,

the vesting analysis will not prevent application of the amended plan.  See, e.g., <u>Neely v.

Pension Trust Fund</u>, No. 00-Civ-2013 (SJ), 2003 U.S. Dist. LEXIS 12896, at *15-18

(E.D.N.Y. 2003) (where plan amendment "merely changed the scope of the administrator's

discretionary authority and did not change the substance of [p]laintiff's benefits", no rights

vested under the earlier plan, and the amended plan in effect at the time benefits were denied

governed the claim); <u>Smathers v. Multi-Tool, Inc.</u>, 298 F. 3d 191, 195-96 (3d Cir. 2002) (cited

with approval in <u>Neely</u>, 2003 U.S. Dist. LEXIS 12896, at *16) ("Here the plan amendment at

issue did not change the coverage under the plan or substance of Smathers' benefits or his

entitlement to them ... All that was changed was the scope of the administrator's discretion

---

[6] In <u>Feifer</u>, the amendment at issue was substantive because it provided for an offset of long term disability benefits based upon the employee's receipt of social security disability benefits and workers' compensation benefits.

20

and authority" – plan amendment was therefore procedural rather than substantive, and the

plan in effect at the time benefits were denied determined the standard of review).  Plaintiff

has provided no basis for this Court to deviate from the well-established general rule under

ERISA that an employee welfare benefit plan is not vested, Joyce, 171 F. 3d at 133; Neely,

2003 U.S. Dist. LEXIS 12896, at *15-18, and therefore his reliance on the Feifer case is

misplaced.

> **5.    HSB's Alleged Failure to Provide Plaintiff With a Copy of the Endorsement Does Not Affect the Standard of Review**

Plaintiff maintains that, although HSB sent him a copy of the Policy upon

his request in June, 2000, he never received a copy of the March, 1999 Endorsement that

reserved discretionary authority in Hartford.

Plaintiff cites no legal authority to support his argument that the Court should

conduct a de novo review here because HSB apparently did not provide him a copy of the

Endorsement.[7]  To the contrary, the fact that he purports to have been without a copy of an

Endorsement when he filed his LTD Application, had no substantive effect on his right to

LTD benefits and there is case law to support the proposition that HSB's alleged failure to

---

[7] Jodi Lussier, the assistant vice-president of benefits for HSB, testified that upon receipt of the Endorsement from Hartford in March, 1999, she would have mailed it to every existing HSB employee (See Exhibit J, deposition of Lussier at p. 94).  However, Lussier would not have mailed the Endorsement to former HSB employees because under the terms of the Policy, long-term disability coverage terminates when an individual ceases to be an active, full-time employee of the company.  (See Exhibit J at p. 95; See also, Exhibit A at p. 14).

21

provide plaintiff with a copy of the Endorsement containing the discretionary language does not justify *de novo* review. See, e.g., Marchetti v. Sun Life Assurance Co. of Canada. 30 F. Supp. 2d 1001, 1008 (M.D. Tenn. 1998) (failure to provide a copy of the Policy does not change the court's standard of review). This is not a case where the plaintiff claims that he lacked notice of his substantive rights and obligations under the Plan (e.g., an obligation to submit certain information necessary to justify a finding of total disability) and the plaintiff's assertion that he had no notice of Hartford's discretionary authority – even if true – does not divest Hartford of its authority nor does it affect the standard by which this Court should review Hartford's determination on the plaintiff's LTD claim.

6. **The Arbitrary And Capricious Standard Of Review Applies Because The Plaintiff Has Failed To Show That Any Conflict Of Interest Affected Its Determination On The Plaintiff's LTD Claim.**

Hartford strongly denies that any conflict of interest was present or in any way influenced its consideration and determination on the plaintiff's LTD Application. Further, although the plaintiff claims that Hartford was operating under a conflict of interest and that a *de novo* standard of review therefore applies, he has made no showing that any such alleged conflict actually influenced Hartford's decision making on his LTD Application. Hartford asserts that even the existence of a conflict of interest will not justify the application of a *de novo* standard of review unless the plaintiff can show that the conflict affected the decision. Caidor v. Chase Manhattan Bank, et al, No. 01-7816, 2002 U.S. App. LEXIS 2651, at 3-4 (2d Cir. 2002). See Sullivan v. LTV Aerospace & Defense

22

Co., 82 F.3d 1251, 1255-56 (2d Cir. 1996) (establishing a two-part inquiry into whether a conflicted administrator's interpretation of plan was arbitrary and capricious: "First, whether the determination made by the administrator is reasonable, in light of possible competing interpretations of the plan; second, whether the evidence shows that the administrator was in fact influenced by such conflict. If the court finds that the administrator was in fact influenced by the conflict of interest, the deference otherwise accorded the administrator's decision drops away and the court interprets the plan *de novo*."); Larsen v. Prudential Ins. Co. of America, 151 F. Supp. 2d 167, 172 (D. Conn. 2001) (Goettel, J.) ("If a plaintiff shows that a conflict exists, a court must determine whether the administrator's decision was reasonable in light of potential conflicting interpretations of the plan and whether the plaintiff has proven that the administrator was in fact influenced by the conflict of interest. . . . Once plaintiff establishes these two factors, the district court must interpret the denial of benefits *de novo*." (citing Sullivan, 82 F.3d at 1255-56). The plaintiff here cannot show that any conflict, if one existed, affected Hartford's interpretation of the Policy or its decision to deny the plaintiff's LTD claim; indeed, the plaintiff cannot meet the first requirement of the Sullivan inquiry, i.e., that the denial was based on an unreasonable interpretation of the Plan, given the ample documentation supporting Hartford's conclusion that the plaintiff was not disabled at the time he stopped working or throughout the Elimination Period. As such, there is no basis

23

for applying anything other than an "arbitrary and capricious" standard of review to Hartford's determination of the plaintiff's LTD Application.

      **7.**      **The Court Should Not Consider Evidence Outside Of The Administrative Record As The Plaintiff Was Given Ample Opportunity To Submit Additional Evidence.**

      Although the decision whether to consider evidence from outside the administrative record is within the discretion of the district court, see DeFelice v. Am. Int'l Life Assurance Co. of N.Y., 112 F.3d 61, 66 (2d Cir. 1997), the presumption is that judicial review "is limited to the record in front of the claims administrator unless the district court finds good cause to consider additional evidence." Id. at 67. In this case, there is simply no "good cause" to admit additional evidence. The Record confirms that Hartford afforded the plaintiff and his counsel ample opportunity to submit additional materials to support his LTD Application and the plaintiff's claim now that he was somehow limited or foreclosed from any submissions is without merit.

      Correspondence between the plaintiff and Hartford demonstrates that Hartranft was afforded every opportunity to submit available evidence in support of his appeal:

> Still, the reality is what reality is, especially financial reality, and so with immense reluctance, I herewith submit the information required. I will contact you as to further medical records you require, if any.

      See Exhibit K, December 30, 2000 letter from Mr. Hartranft to Ms. Lisa Lavallee at Hartford.

*****

> This is the final request for the information we need to fully evaluate this long-term disability (LTD) claim for benefits. If we do not receive this information, we will make a claim determination based on the information currently in our file, which may result in termination or denial of your claim.

See Exhibit K, January 3, 2001 letter to Mr. Hartranft from Ms. Lavallee.

*****

> I hope this will provide everything you need. If not, please contact me at 658-6276, or better by e-mail at hartranft@home.com. I apologize for the delay in providing information. On average, I have only a few productive hours each day, and this task is agonizingly unpleasant for me to perform. I would rather prove anything else than being disabled.

See Exhibit K, January 9, 2001 correspondence from Mr. Hartranft to Ms. Lavallee.

*****

> If you have any additional information not previously submitted, which you believe will assist us in evaluating your claim for LTD benefits, please forward that information to us within sixty (60) days from the date of this letter. In particular, any medical information you may have that supports you were unable to perform the Essential Duties of your occupation through and beyond the Elimination Period may assist us in further evaluating your claim for benefits. The Hartford will review any additional information you submit, along with previously submitted information, and will notify you of the results of our review.

See Exhibit E, February 8, 2001 correspondence to Mr. Hartranft from Ms. Lavallee.

In <u>Muller v. First Unum Life Insurance Company</u>, 341 Fed. 119 (2nd Cir. 2003), the Court held that, where the plaintiff is provided ample time to submit additional material in support of his appeal, no "good cause" exists to allow the Court to consider evidence outside of the administrative record. <u>Id.</u> at 125. The correspondence outlined above is clear evidence that Hartranft had ample opportunity to – and did – submit additional evidence in support of his LTD Application.

In addition, during the appeal process, the plaintiff through his attorney, submitted considerable additional documentation, including affidavits from the plaintiff, his family and former co-workers. Those materials were all considered by Hartford on appeal.

Hartford's February 8, 2001 Denial (Exhibit E) and its August 1, 2001 Appeal Denial (Exhibit F) demonstrates that Hartford's benefit determination was based on thorough reviews of all of the information made available, including the records of the plaintiff's treatment with his doctors; independent telephone conversations with those doctors; and materials and affidavits submitted by Attorney Meyer (all of which confirm, e.g., that the plaintiff's HSB employment ended because his job was eliminated, not because of a disability and that plaintiff did not seek any treatment for his Parkinson's Disease for a period of 15 months beginning a month before he stopped working).

## III.   CONCLUSION

For all the reasons discussed hereinabove, the plaintiff's Motion In Limine should be denied and Hartford's benefit determination should be reviewed under an arbitrary and

capricious standard without the admission of any evidence beyond the administrative record. As of the time the plaintiff's LTD Application was denied, the Policy had been amended to add an Endorsement and contained other clear language conferring discretionary authority on Hartford to interpret the Policy provisions and to make benefit eligibility determinations. Despite being permitted to conduct discovery on the standard of review, the plaintiff has failed to identify any conflict of interest which affected Hartford's decision making on the plaintiff's LTD claim and he has provided the Court with no other justification to find that it should conduct a de novo review and/or permit evidence beyond the administrative record.

THE DEFENDANT,
HARTFORD LIFE & ACCIDENT
INSURANCE COMPANY

By:_____
MICHAEL G. DURHAM (#ct 05342)
BROCK T. DUBIN (#ct 18777)
DELANEY, ZEMETIS, DONAHUE,
DURHAM & NOONAN, P.C.
Concept Park
741 Boston Post Road
Suite 306
Guilford, CT  06437
Telephone:  (203) 458-9168
Facsimile:  (203) 458-4424

**CERTIFICATION**

      This is to certify that a copy of the foregoing was mailed, postage prepaid, on the

above-written date, to:

Attorney Judith D. Meyer
Law Office of Judith D. Meyer
152 Simsbury Road
P.O. Box 451
Avon, CT   06001-0451

Eric L. Sussman, Esq.
Day, Berry & Howard, LLP
CityPlace I
Hartford, CT   06103-3499

 

 

MICHAEL G. DURHAM