## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ROBERT M. HARTRANFT, JR.,               :    CIVIL ACTION NO.  3:01CV1870(GLG)
                                        :
                    Plaintiff,          :
VS.                                     :
                                        :
HARTFORD LIFE AND ACCIDENT INSURANCE:
CO. and HSB GROUP, INC.,                :
                                        :
                    Defendants.         :    DECEMBER 23, 2003

### DEFENDANT HSB GROUP, INC.'S OBJECTION TO
### PLAINTIFF'S MOTION IN LIMINE

The defendant, HSB Group, Inc. ("HSB"), objects to plaintiff's Motion in Limine

regarding the standard of review and scope of the evidence ("Plaintiff's Motion").

## I.    INTRODUCTION

This case is about a former HSB employee who waited until more than a year after his

separation from employment before applying for long term disability benefits under HSB's

Disability Plan.  Plaintiff asks this Court to review *de novo*, and subsequently overturn, the denial

of his application for disability benefits.  *De novo* review is inappropriate in this case.

Notwithstanding plaintiff's argument to the contrary, the relevant plan documents do contain a

proper reservation of discretion sufficient to require that this Court apply the arbitrary and

capricious standard.  In addition to an explicit reservation of discretion in the Plan document itself,

the Group Insurance Policy issued by Hartford Life and Accident Insurance Company ("Hartford

Life"), which was incorporated into the Plan document, contained an Endorsement that expressly reserved discretionary authority. Plaintiff's argument that the Endorsement is invalid is based on: (1) his erroneous interpretation of applicable law; and (2) his factually incorrect assertion that HSB's Summary Plan Description allegedly does not permit amendment or modification of the terms upon which coverage is available.

Plaintiff's argument that Hartford Life's alleged conflict of interest in denying his claim for benefits justifies *de novo* review is equally unavailing. As explained more fully herein, aside from his conclusory assertions, plaintiff has failed to establish that Hartford Life operated under a conflict of interest, nor can he show, as he must to justify *de novo* review, that any alleged conflict actually influenced Hartford Life's decision.

In any event, even if this Court somehow finds that *de novo* review is appropriate, it should not consider evidence beyond the administrative record because there is not good cause to do so.

## II.   **FACTUAL BACKGROUND**

Plaintiff worked as an Engineer at HSB Group, Inc. ("HSB") from 1996 until his layoff on March 1, 1999. (Affidavit of Robert M. Hartranft, Jr. of 11/13/03 ("Hartranft Aff."), attached as Exhibit A to Plaintiff's Motion in Limine, ¶¶ 5, 14.) Throughout his employment, plaintiff participated in The HSB Group, Inc. Employees' Disability Plan ("Plan").[1] The Plan describes

---

[1] A complete copy of the Plan is attached hereto as Exhibit A.

-2-

both short-term and long-term disability benefits, and covers Plan participants in the event that they become "totally disabled" from employment, as defined in the Plan. The Plan provides that "[t]he Disability Committee has *sole discretion* to determine whether a particular situation is intended to be covered by the Plan." (Exhibit A at 2 (emphasis added).) It further provides that "Long-Term Disability Benefits shall be determined in accordance with the terms of the Group Insurance Policy in effect between HSB and the Hartford Life and Accident Insurance Company effective January 1, 1998 (the "Policy"),[2] a copy of which is attached to and *incorporated into this Plan.*"[3] (Exhibit A at 6 (emphasis added).) HSB distributed a Summary Plan Description ("SPD") to its employees. The SPD is incorporated into HSB's employee handbook, entitled "Making Tracks."[4] The handbook makes clear that the descriptions therein "are intended solely to highlight HSB policies and benefit plans. Descriptions are not intended as substitutes for the documents which legally govern each policy and benefit plan summarized in this handbook." (Exhibit C, "Making Tracks," at A-1.)

The Group Insurance Policy that was incorporated into the Plan repeatedly makes clear that Hartford Life, and not HSB, makes eligibility determinations for long-term disability benefits.

---

[2] A complete copy of the Policy is attached hereto as Exhibit B.

[3] During the period of plaintiff's employment that predated January 1, 1998, HSB self-insured its Plan. Effective January 1, 1998, HSB converted from a self-insured plan to a fully-insured plan with Hartford Life. (Deposition of Jodi Lussier ("Lussier Dep.") at 23-24.)

[4] A complete copy of "Making Tracks" is attached hereto as Exhibit C.

-3-

(Exhibit B at 15, 20-29.)[5] Moreover, an Endorsement to the Policy expressly provides that "The Hartford has full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." (Exhibit B.) It is true that Hartford Life originally inadvertently omitted this Endorsement from the Policy. However, Hartford Life supplied the Endorsement to HSB in March 1999, over a year before plaintiff even made an inquiry about long-term disability benefits.[6] (Letter from Adamowicz to HSB of 3/22/99, attached as Exhibit D.) Jodi Lussier, the Assistant Vice President, Benefits for HSB, testified that, upon receipt of the Endorsement from Hartford Life, she would have mailed it to every existing HSB employee. (Deposition of Jodi Lussier ("Lussier Dep.") at 94.)[7] Ms. Lussier would not have mailed the Endorsement to *former* HSB employees because, under the terms of the Policy, long-term disability coverage terminates when an individual ceases to be an active, full-time employee of the company. (Lussier Dep. at 95; Policy, Exhibit B, at 14.)

Plaintiff was diagnosed with Parkinsons' Disease in or about 1993. (Hartranft Aff., ¶ 12.) However, throughout his employment with HSB and for about a year afterwards, plaintiff "denied

---

[5] The Policy states, for example, that "The Hartford reserves the right to determine if your proof of loss is satisfactory." (Exhibit B at 21.) It also provides that applicants must "submit proof of loss satisfactory to the Hartford," (id. at 15), that "[w]ritten proof of loss must be sent to The Hartford," (id. at 20), and that "[a] decision will be made by The Hartford...." (Id. at 22.)

[6] By its terms, the Endorsement was effective January 1, 1998.

[7] Portions of Ms. Lussier's deposition testimony cited herein are attached as Exhibit E.

that [his] symptoms were permanent, and [he] insisted that [he] simply had an intractable flu, or some temporary health problem, and would soon be able to return to work." (Hartranft Aff., ¶ 17.) Indeed, plaintiff remained employed by HSB full-time and received and accepted payment of his full salary through his layoff date of March 1, 1999. Following his layoff he received and accepted eight weeks of severance payments. Plaintiff never made a claim for disability benefits during his employment, and waited until more than a year after his layoff before finally sending a letter to HSB concerning his intention to file such a claim. (Letter from Hartranft to Feigel of 4/26/00, attached as Exhibit F.) Notably, in his letter, plaintiff admitted that, "because of the inconspicuous onset and subtle progress of these conditions, neither my HSB supervisors nor I understood nor appreciated how disabling the conditions had become by the time of my lay-off. That has become apparent only during the course of subsequent treatment, and is responsible for the delay in submitting this claim." (Exhibit F, at 1.)

On or about June 2, 2000, Jodi Lussier, the Assistant Vice President, Benefits for HSB, sent plaintiff a letter in response. She indicated, consistent with the Policy, that "[e]ligibility for LTD benefits under the Plan is determined by [Hartford Life]" and that Hartford Life "would make the final determination of [plaintiff's] eligibility [for benefits]." (Letter from Lussier to Hartranft

of 6/2/00, attached as Exhibit G, at 1.)  Ms. Lussier also enclosed a copy of the long-term disability

application, the Policy and the Plan document.[8]  (Lussier Dep. at 31.)

Following a through review of plaintiff's claim for long term disability benefits, Hartford

Life rejected the claim by letter dated February 8, 2001.[9]  Following plaintiff's administrative

appeal of that decision, Hartford Life upheld its original findings by letter dated August 1, 2001.

Plaintiff filed suit against Hartford Life in this Court on October 1, 2001, and amended his

Complaint on December 27, 2001 to name HSB as a defendant.  In his Amended Complaint,

plaintiff alleges a violation of the Employee Retirement Income Security Act ("ERISA") and

claims that the decision to deny his claim for long term disability benefits was "arbitrary and

capricious." (Amended Complaint, ¶ 22.)  Notwithstanding this allegation in plaintiff's Amended

Complaint, he now asks this Court to review Hartford Life's decision *de novo*.

---

[8] Plaintiff's counsel mischaracterizes Ms. Lussier's testimony in this regard.  A careful
review of the testimony reveals that Ms. Lussier indeed sent copies of the long-term disability
application, the Policy and the Plan. (Lussier Dep. at 31.)  Ms. Lussier acknowledges that she did
not check each and every page of those documents to ensure that none were missing.  (Id. at 61.)
Ms. Lussier's testimony was clear, however, that, aside from the possibility of an inadvertently
omitted page, she indeed sent each of those documents to the plaintiff.  (Id. at 31, 61-63.)

[9] Plaintiff's application for long term disability benefits was dated August 27, 2000.

## III.     ARGUMENT

### A.     This Court Should Apply the Arbitrary and Capricious Standard in Determining Whether the Denial of Long Term Disability Benefits was Proper.

"The Supreme Court has ruled that the standard of review for denial of benefits challenged under ERISA, 29 U.S.C. § 1132(a)(1)(B), is de novo, unless the plan expressly gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Larsen v. Prudential Ins. Co. of America 151 F.Supp.2d 167, 171 (D. Conn. 2001) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Where, however, an ERISA plan administrator has discretionary authority to construe the terms of the plan, a court may not overturn the administrator's decision unless the decision is "arbitrary and capricious." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 114 (1989); O'Shea v. First Manhattan Co. Thrift Plan & Trust, 55 F.3d 109, 112 (2d Cir. 1995); Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995); Brunoli v. Brunoli & Sons, Inc. Pension Plan, 993 F. Supp. 66, 72 (D. Conn. 1997). To determine the threshold issue of whether a plan administrator has discretionary authority, the court must look to the terms of the applicable plan. O'Shea, 55 F.3d at 112. There are no "magic words" to determine whether plan language satisfies the standard. De Nobel v. Vitro Corp., 885 F.2d 1180, 1187 (4th Cir. 1989); see also Kinstler v. First Reliance Standard Life Insurance Co., 181 F. 3d 243, 251 (2d Cir. 1999) (arbitrary and capricious standard applies where

the plan explicitly provides for plan authority to resolve all disputes and ambiguities relating to the interpretation of the plan).

Both the Plan and the Policy are clear in reserving discretion to determine eligibility for Long Term Disability Benefits. The Plan provides that "[t]he Disability Committee has *sole discretion* to determine whether a particular situation is intended to be covered by the Plan." (Exhibit A at 2 (emphasis added).)  Endorsement GR-2025(496)A-HLA-DISC to the Policy states that "The Hartford has full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy."  Such language constitutes a clear reservation of discretionary authority under ERISA sufficient to invoke an arbitrary and capricious standard of review.  Dobson v. Hartford Financial Servs., 196 F.Supp.2d 152, 158 (D. Conn. 2002).

Plaintiff essentially makes three arguments as to why these statements are insufficient to reserve discretion.  First, he argues that there was no reservation of discretion because the SPD does not explicitly contain one. (Pl.'s Motion at 3, 5.)  Second, he claims that the statement in the Plan that "[t]he disability committee has sole discretion to determine whether a particular situation is intended to be covered by the plan" is an insufficient reservation of discretion because, in plaintiff's view, that statement "does not refer to disability determinations, but to the Disability Committee's broader duties related to the plan." (Pl.'s Motion at 9.)  Finally, plaintiff claims that the Endorsement to the Policy is ineffective because: (1) it was not made part of the Policy until

-8-

March 1999, *after* plaintiff had allegedly become disabled; (2) the decision to add the

Endorsement was made by Hartford Life, not HSB and, according to plaintiff, the Plan provides

that "only the Senior Officers of HSB may amend the Plan's terms"; and (3) HSB allegedly failed

to provide him with a copy of the Endorsement upon his request. (Pl.'s Motion at 10, 18.) All of

plaintiff's contentions are meritless.


1.    The SPD is not the only operative document.

Plaintiff seems to argue that the absence of an express reservation of discretion *in the SPD*

requires this Court to find that HSB never properly reserved such discretion. (Pl.'s Motion at 3, 5.)

He asks this Court to ignore the section of "Making Tracks" that expressly provides that the

descriptions contained therein "are intended solely to highlight HSB policies and benefit plans.

Descriptions are not intended as substitutes for the documents which legally govern each policy

and benefit plan summarized in this handbook." (Pl.'s Motion at 3, 14-15.) Although courts do

treat an SPD as controlling if the SPD conflicts with the underlying disability policy,[10] this rule

does not apply "if no direct conflict exists or if the SPD is silent on an issue that is described in the

underlying policy." Communication Workers of America et al. v. Nynex Corp. et al., 205

F.Supp.2d 224, 227 (S.D.N.Y. 2002) (citations omitted). See also Utah Alcoholism Foundation v.

---

[10] See, e.g., Heidgerd v. Olin Corp., 906 F.2d 903, 908 (2d Cir. 1990); Burke v. Kodak Retirement Income Plan et al., 336 F.3d 103, 110 (2d Cir. 2003).

Battelle Pacific Northwest Laboratories, 204 F.Supp.2d 1295, 1300-02 (D. Utah 2002) (where plan

document conferred discretionary authority and SPD was silent on the issue, failure to include

discretionary language in SPD did not negate such language in plan document) (citing Martin v.

Blue Cross & Blue Shield of Va., Inc., 115 F.3d 1201, 1205 (4th Cir. 1997); Cagle v. Bruner, 112

F.3d 1510 (11th Cir. 1997);  Wald v. Southwestern Bell Corp. Customcare Med. Plan, 83 F.3d

1002, 1006 (8th Cir. 1996);  Atwood v. Newmont Gold Co., 45 F.3d 1317, 1321 (9th Cir. 1995)).

     Notwithstanding plaintiff's conclusory assertion that the Plan "contradicts" the SPD, (Pl.'s

Motion at 10), he fails to cite a single example of any such contradiction.  At best, plaintiff has

pointed out that the SPD is silent on certain issues that are more fully described in the Plan and/or

Policy.  As a matter of law, such a showing is insufficient to justify treating the SPD as controlling

to the exclusion of the Plan and Policy.  Communication Workers of America et al. v. Nynex Corp.

et al., 205 F.Supp.2d 224, 227 (S.D.N.Y. 2002) (citations omitted).  Thus, the mere fact that the

SPD does not contain an explicit reservation of discretion is irrelevant where, as here, the Plan and

the Policy do contain such a reservation.


     2.     The Plan contains a clear and express reservation of discretion.

     The Plan provides that "[t]he disability committee has *sole discretion* to determine whether

a particular situation is intended to be covered by the Plan."  (Exhibit A at 2 (emphasis added).)

Plaintiff contends that this is an insufficient reservation of discretion.  (Pl.'s Motion at 9.)  As

-10-

support for this spurious claim, plaintiff mischaracterizes Lussier's deposition testimony by suggesting that Lussier testified that the sentence in the Plan that reserves discretion "does not refer to disability determinations, but to the Disability Committee's broader duties related to the plan." (Pl.'s Motion at 9 (citing Lussier Dep. at 26).) Notwithstanding plaintiff's claim to the contrary, at no time did Lussier testify that the "sole discretion" language "does not refer to disability determinations." (Lussier Dep. at 26.) Indeed, the plain language of the sentence at issue belies any such interpretation. The sentence in question is an express, undeniable and broad reservation of discretion sufficient to require application of the arbitrary and capricious standard upon review of the administrative decision.

3.      The Endorsement to the Policy is effective.

In addition to the clear and unambiguous language in the Plan reserving discretionary authority, the Policy also contains clear reservations of discretion. The Plan states that "Long-Term Disability Benefits shall be determined in accordance with the terms of the Group Insurance Policy in effect between HSB and the Hartford Life and Accident Insurance Company effective January 1, 1998, a copy of which is attached to and *incorporated into this Plan*." (Exhibit A at 6 (emphasis added).) An Endorsement to the Policy, in turn, expressly provides that "The Hartford has full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." (Exhibit B.) Plaintiff seems to offer

-11-

three reasons why this Endorsement is ineffective.  First, he notes that it was not made part of the Policy until March 1999, *after* plaintiff had allegedly become disabled.[11]  Second, he points out that the decision to add the Endorsement was made by Hartford Life, not HSB and, according to plaintiff, the Plan provides that "only the Senior Officers of HSB may amend the Plan's terms." Third, he claims that HSB allegedly failed to provide him with a copy of the Endorsement upon his request.  All three of these arguments lack merit.

> a.    *The governing documents are those in effect at the time Hartford Life decided plaintiff's claim for long term disability benefits.*

It is undisputed that the Endorsement was inadvertently omitted from the original Policy and that Hartford Life did not physically supply the Endorsement to HSB until March 1999. (Exhibit D.)  It is also undisputed, however, that plaintiff did not make a claim for long term disability benefits until more than a year later.  Plaintiff alleges that he became totally disabled as of February 1999, and that therefore, the Policy in effect at that time governs his claim for long term disability benefits, even though plaintiff evidenced no intent to submit a claim for those benefits until at least April of 2000.  (Pl.'s Motion at 12-13.)  The law does not support plaintiff's argument in this regard.  On the contrary, courts in this circuit as well as others have held, in

---

[11] By its terms, the Endorsement was effective January 1, 1998, but it was not physically appended to the Policy until March 1999.

circumstances similar to these, that the governing plan document is the one in effect at the time the claim is decided, not the one in effect at the time the plaintiff claims he became disabled.

In <u>Armstrong v. Liberty Mutual Life Assurance Co. of Boston et al.</u>, 273 F.Supp.2d 395 (S.D.N.Y. 2003), for example, the plaintiff sued the defendant insurance company for violations of ERISA after the defendant determined that the plaintiff was no longer eligible to receive long term disability benefits. The defendant had paid benefits to the plaintiff beginning in 1994 under a policy that became effective in 1992. In 1997, the defendant issued an amended policy, and in 2001, it terminated the plaintiff's benefits. In examining the policy language to determine whether it conferred sufficient discretionary authority to justify use of the arbitrary and capricious standard of review, the court held that the 1997 policy was the applicable one, even where the plaintiff's benefits had originally been paid under the 1992 policy. <u>Id.</u> at 403. <u>See also</u> <u>Neely v. Pension Trust Fund</u>, No. 00-Civ-2013 (SJ), 2003 U.S. Dist. LEXIS 12896, at *15-16 (E.D.N.Y. 2003) (citations omitted) ("when an employee benefit plan is amended to confer discretionary authority upon an administrator to make benefit determinations, it is the amended plan [] in effect at the time benefits were denied that governs the claim," even where the claim was originally filed under an earlier plan);[12] <u>Smathers v. Multi-Tool, Inc.</u>, 298 F.3d 191, 195-96 (3d Cir. 2002) (where the plan amendment was procedural rather than substantive, the plan in effect at the time benefits were denied determines the standard of review). Here, plaintiff did not even file a claim for disability

---

[12] Copies of all unreported cases cited herein are attached as Exhibit H.

-13-

benefits until more than a year after Hartford Life issued the Endorsement in question. Thus, as a matter of law, the applicable Policy included the Endorsement.

> b.    *Plaintiff was not vested in the long term disability benefits.*

Plaintiff insists that, because he was allegedly totally disabled as of February 1999, he then became "vested" in the long term disability benefits, and neither HSB nor Hartford life had authority to change the terms of the Plan as of that time. (Pl.'s Mot. at 13; Hartranft Aff., ¶ 19.) The general rule under ERISA is that "an employee welfare benefit plan is not vested and that an employer has the right to terminate or unilaterally to amend the plan at any time." Joyce v. Curtiss-Wright Corp., 171 F.3d 130, 133 (2d Cir. 1999) (citations and internal quotation marks omitted). The Second Circuit articulated a limited exception to this general rule in Feifer v. Prudential Ins. Co. of America, 306 F.3d 1202 (2d Cir. 2002). In Feifer, the court held that "a benefit becomes 'vested' if the employer has promised not to amend or terminate it, and the employee has accepted this offer by beginning or continuing in employment." Id. at 1211 (citations omitted) (emphasis added). The court also held that, "absent explicit language to the contrary, a plan document providing for *disability benefits* promises that these benefits vest with respect to an employee no later than the time that the employee becomes disabled." Id. at 1212 (emphasis added).

As a preliminary matter, plaintiff is patently incorrect in asserting that HSB promised not to amend or terminate the Plan. He claims that "[n]othing in the SPD suggests that HSB can

-14-

reduce, withdraw or modify the coverage or the terms upon which coverage is available." (Pl.'s Motion at 2-3.) On the contrary, HSB's Employee Handbook, which incorporates the SPD, explicitly states that "HSB intends to continue the plans described in this handbook indefinitely, *but reserves the right to change, modify, amend or terminate any of them in whole or in part at any time.*" (Exhibit C at X-7.) Thus, the SPD does, in fact, expressly permit modification of the Plan.

Nor can plaintiff rely on the language in <u>Feifer</u> to the effect that "absent explicit language to the contrary, a plan document providing for disability benefits promises that these benefits vest with respect to an employee no later than the time that the employee becomes disabled." <u>Feifer</u>, 306 F.3d at 1212. <u>Feifer</u> stands for the proposition that, where a plan beneficiary has become disabled such that the individual's benefits under the plan vest, the plan administrator cannot amend the plan in a way that affects the individual's <u>substantive</u> benefits.[13] Where, however, as here, the amendment to the plan does not change the substance of the employee's benefits, but is merely procedural in nature, the vesting analysis will not prevent application of the amended plan. <u>See</u>, <u>e.g.</u>, <u>Neely v. Pension Trust Fund</u>, No. 00-Civ-2013 (SJ), 2003 U.S. Dist. LEXIS 12896, at *15-18 (E.D.N.Y. 2003) (where plan amendment "merely changed the scope of the administrator's discretionary authority and did not change the substance of [p]laintiff's benefits," no rights vested under the earlier plan, and the amended plan in effect at the time benefits were denied governed

---

[13] In <u>Feifer</u>, the amendment at issue was substantive because it provided for an offset of long term disability benefits based upon the employees' receipt of social security disability benefits and workers' compensation benefits.

the claim); <u>Smathers v. Multi-Tool, Inc.</u>, 298 F.3d 191, 195-96 (3d Cir. 2002) (cited with approval in <u>Neely</u>, 2003 U.S. Dist. LEXIS 12896, at *16) ("Here the plan amendment at issue did not change the coverage under the plan or substance of Smathers' benefits or his entitlement to them...All that was changed was the scope of the administrator's discretion and authority"—plan amendment was therefore procedural rather than substantive, and the plan in effect at the time benefits were denied determined the standard of review).[14] Plaintiff has provided no basis for this Court to deviate from the well-established general rule under ERISA that an employee welfare benefit plan is not vested. <u>Joyce</u>, 171 F.3d at 133; <u>Neely</u>, 2003 U.S. Dist. LEXIS 12896, at *15-18.

       *c.*     *Hartford Life had authority to add the Endorsement.*

Plaintiff's remaining argument, that Hartford Life somehow lacked authority to add the Endorsement, is also meritless. Plaintiff's argument in this regard is twofold: (1) that *no one* had authority to issue the Endorsement because the SPD allegedly does not reserve authority to modify the Plan; and (2) that, if *anyone* had authority to modify the Plan by issuing the Endorsement, it was not Hartford Life.

---

[14] Plaintiff's argument that his benefits under the Plan vested because he was allegedly totally disabled as of February 1999, (Pl.'s Motion at 13; Hartranft Aff., ¶ 19), is unavailing for the additional reason that this argument assumes the very conclusion plaintiff ultimately is asking this Court to draw, i.e., that he was totally disabled prior to his separation of employment from HSB.

-16-

Plaintiff claims that "[n]othing in the SPD suggests that HSB can reduce, withdraw or modify the coverage or the terms upon which coverage is available," and therefore, neither HSB nor Hartford Life was empowered to add the Endorsement to the Policy. (Pl.'s Motion at 3, 13-14.) As explained in the foregoing section, plaintiff is patently incorrect. HSB's Employee Handbook, which incorporates the SPD, explicitly states that "HSB intends to continue the plans described in this handbook indefinitely, *but reserves the right to change, modify, amend or terminate any of them in whole or in part at any time.*" (Exhibit C at X-7.) Thus, the SPD expressly permits modification of the Plan.

Plaintiff suggests that, in any event, *Hartford Life* may not amend or modify the Plan. (Pl.'s Motion at 6, 10.) Once again, plaintiff is mistaken. By its terms, the Plan expressly incorporates the Policy. (Exhibit A at 6.) Page PI-7.11 of the Policy, in turn, provides that "after the policy has been in force for 12 months, The Hartford may change any or all of the policy's provisions by notifying the Policyholder." (Exhibit B at PI-7.11.) Thus, the Policy, and therefore the Plan (because the Plan incorporates the Policy), expressly gives Hartford Life authority to change the Policy's provisions, including but not limited to the authority to add the Endorsement in question.

        *d.     HSB's alleged failure to provide plaintiff with a copy of the Endorsement does not affect the standard of review.*

Plaintiff maintains that, although HSB sent him a copy of the Policy upon his request in June 2000, he never received a copy of the Endorsement that reserves discretionary authority in

-17-

Hartford Life. (Pl.'s Motion at 4-5.) Plaintiff claims that HSB's alleged failure to send him a copy of the Endorsement justifies *de novo* review. (Pl.'s Motion at 18.)

Plaintiff cites no legal authority whatsoever to support such a proposition. There is, however, case law to support the proposition that HSB's alleged failure to provide plaintiff with a copy of the Endorsement containing the discretionary language is *insufficient* to justify *de novo* review. See, e.g., Marchetti v. Sun Life Assurance Co. of Canada, 30 F.Supp.2d 1001, 1008 (M.D. Tenn. 1998) (failure to provide a copy of the Policy does not change the court's standard of review). Plaintiff's argument that HSB's alleged failure to provide him with a copy of the Endorsement somehow alters the standard of review is a non-sequitur. The fact that he allegedly did not have a copy of an Endorsement that he did not even request until more than a year after his employment ended (and more than a year after he claims his period of total disability commenced) had no substantive effect on his right to long term disability benefits. This is not a case where the plaintiff claims that he lacked notice of his substantive rights and obligations under the Plan, such as an obligation to submit certain information necessary to justify a finding of total disability. Plaintiff's claim is simply that he had no notice of Hartford Life's discretionary powers. Plaintiff cites no case law to support the proposition that his alleged lack of notice regarding Hartford Life's discretionary authority somehow *divests* Hartford Life of that authority and affects the standard of review for this Court in determining plaintiff's substantive rights to long term disability benefits.

-18-

4.    <u>Even absent the Endorsement, the Policy language is sufficient to reserve discretion in Hartford Life.</u>

Even if this Court were to disregard both the Plan and the Policy Endorsement entirely, language in other parts of the Policy is independently sufficient to reserve discretionary authority. The Policy states, for example, that "The Hartford reserves the right to determine if your proof of loss is satisfactory." (Exhibit B at 21.) It also provides that applicants must "submit proof of loss satisfactory to the Hartford," (<u>id.</u> at 15), that "[w]ritten proof of loss must be sent to The Hartford," (<u>id.</u> at 20), and that "[a] decision will be made by The Hartford...." (<u>Id.</u> at 22.)

In <u>Larsen v. Prudential Ins. Co. of America</u>, 151 F.Supp.2d 167 (D. Conn. 2001), this Court held that policy language was sufficient to reserve discretion where it "us[ed] the phrases 'when Prudential determines' and 'when Prudential decides' in sections discussing eligibility for coverage and benefits." <u>Id.</u> at 171 (citations omitted). <u>See also</u> <u>Scannell v. Metropolitan Life Ins. Co.</u>, No. 03 Civ. 990, 2003 U.S. Dist. LEXIS 20749, at *16-17 (S.D.N.Y. 2003) (language stating that, "[t]o receive long-term [disability] benefits you must first file a claim with the insurance company, which makes the final decision on all claims," clearly imparts discretion to the insurance company).

Even if this Court were to disregard the Endorsement entirely, which it should not, the language contained in the remainder of the Policy is more than sufficient to reserve discretionary authority. The language in the Policy at issue that "The Hartford reserves the right to determine if your proof of loss is satisfactory" is at least as strong a reservation of discretion as the language in

-19-

Larsen that used the phrases "when Prudential determines" and "when Prudential decides."[15]  As in Larsen, the language in the present case makes abundantly clear that Hartford Life has discretion to make eligibility determinations under the Policy.  Because Hartford Life had such discretionary authority, this Court should apply the arbitrary and capricious standard of review, as it did in Larsen.

     5.     <u>Plaintiff cannot show that Hartford Life had a conflict of interest.</u>

Plaintiff contends that, even if the Plan contained a proper reservation of discretion, *de novo* review is nonetheless appropriate in this case because "[a]s the party that both paid the benefits and reviewed the claim, [Hartford Life] certainly had a conflict of interest."  (Pl.'s Motion at 9-10.)  To escape the "arbitrary and capricious" standard of review, however, plaintiff must prove not only that the decision-maker operated under a conflict of interest, but also that that conflict <u>actually</u> <u>influenced</u> the administrator's decision.  <u>Caidor v. Chase Manhattan Bank et al.</u>, No. 01-7816, 2002 U.S. App. LEXIS 2651, at *3-4 (2d Cir. 2002) (citing <u>Sullivan v. LTV Aerospace 7 Def. Co.</u>, 82 F.3d 1251, 1255 (2d Cir. 1996); <u>Pagan v. NYNEX Pension Plan</u>, 52

---

[15] Plaintiff's attempt to compare this case to <u>Kinstler v. First Reliance Standard Life Ins. Co.</u>, 181 F.3d 243 (2d Cir. 1999) is unavailing.  (Pl.'s Motion at 15.)  In <u>Kinstler</u>, the court held that policy language requiring a claimant to "submit[] satisfactory proof of Total Disability to us" was insufficient to confer discretionary authority.  <u>Id.</u> at 251-52.  Unlike the policy language in <u>Kinstler</u>, the language in the Policy at issue in this case expressly provides that Hartford Life "*reserves the right to determine* if your proof of loss is satisfactory."

F.3d 438, 442 (2d Cir. 1995)).  See also Larsen v. Prudential Ins. Co. of America, 151 F.Supp.2d 167, 172 (D. Conn. 2001); Durr v. Metropolitan Life Ins. Co., 15 F.Supp.2d 205, 209-10 (D. Conn. 1998) (citation omitted).

In Larsen, the plaintiff argued that "when defendant decided to deny him disability benefits, it was operating under a conflict of interest because of its dual role in determining eligibility and paying benefits." Id. at 172.  This Court found that "[o]ther than the conclusory statement in the motion that defendant's decision to deny plaintiff benefits presented a conflict of interest, plaintiff does not adduce any facts or evidence tending to establish the existence of a conflict *or how a conflict, if it existed, affected the reasonableness of the determination*.  In the absence of such proof, this Court will continue to apply a deferential standard to defendant's decision." Id. at 173 (emphasis added).

As in Larsen, plaintiff in this case makes nothing more than a conclusory statement that Hartford Life operated under a conflict of interest.  He offers no facts or evidence of such a conflict, nor can he show that any alleged conflict actually influenced Hartford Life's decision.  Absent such a showing, this Court should apply the deferential arbitrary and capricious standard in reviewing the decision to deny disability benefits.

-21-

**B.    This Court Should Not Consider Evidence Beyond the Administrative Record.**

Because the arbitrary and capricious standard is the appropriate standard of review, this Court must not consider evidence outside the administrative record. Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir. 1995) (a district court's review under the arbitrary and capricious standard is limited to the administrative record). However, even if this Court were to review Hartford Life's decision *de novo*, it nonetheless should not consider evidence outside the administrative record.

Even where the court finds that *de novo* review is appropriate, "[j]udicial review of a plan administrator's determination is confined to the administrative record unless…'good cause' justifies expanding the record." Krizek v. Cigna Group Insurance, 345 F.3d 91, 98-99 (2d Cir. 2003) (citing Connors v. Connecticut General Life Ins. Co., 272 F.3d 127, 134-35 (2d Cir. 2001)). See also Muller v. First Unum Life Ins. Co., 341 F.3d 119, 125 (2d Cir. 2003) (same). Moreover, even in the presence of good cause, the district court still has discretion as to whether to consider information outside the administrative record. Suozzo v. Bergreen, No. 00 Civ. 9649, 2003 U.S. Dist. LEXIS 18597, at *12 (S.D.N.Y. 2003) (citations omitted).

Plaintiff relies principally on DeFelice v. American Int'l Life Assurance Co., 112 F.3d 61 (2d Cir. 1997) to support his argument that this Court should consider evidence beyond the administrative record. Plaintiff's reliance on DeFelice is misplaced. Unlike DeFelice, this case does not involve a situation in which the decision-making committee had "no established criteria

-22-

for determining an appeal," nor was there "a practice of destroying or discarding all records within minutes after hearing an appeal." DeFelice, 112 F.3d at 66.

This case more closely resembles Muller v. First Unum Life Ins. Co., 341 F.3d 119, 125 (2d Cir. 2003), and plaintiff's feeble attempt to distinguish Muller is unavailing. In Muller, the United States Court of Appeals for the Second Circuit affirmed the district court's decision to disregard evidence outside the administrative record. The court held that the was no good cause to admit additional evidence where "[t]he record indicat[ed] that First Unum gave Muller ample time to submit additional materials and that First Unum had already received letters from [plaintiff's physicians]." Id. at 125.

Here, as in Muller, and notwithstanding plaintiff's conclusory claim to the contrary, (Pl.'s Motion at 22-23), plaintiff had ample time and opportunity to submit to Hartford Life any and all information he deemed appropriate. Indeed, plaintiff and his attorney communicated regularly with Hartford Life during the pendency of his initial claim for long term disability benefits and during the pendency of his administrative appeal. (See, e.g., Series of Letters between Hartranft and Hartford Life, attached as Exhibit I.) In addition to requesting specific documents to analyze plaintiff's claim for disability benefits, Hartford Life also instructed plaintiff to "include any other pertinent medical information that you feel will help substantiate your period of disability." (Exhibit I, Letter from Lavallee to Hartranft of 11/27/00, at 2.) Significantly, plaintiff's counsel even supplemented the administrative record during the administrative appeal process by letter to

-23-

Hartford Life dated April 7, 2001, enclosing what she termed "new evidence" in support of plaintiff's claim for benefits. (Letter from Meyer to Lavallee of 4/7/01, attached as Exhibit J, at 7.) Under these circumstances, plaintiff cannot reasonably argue that he did not have ample time and opportunity to submit any and all evidence of his alleged disability that he or his attorney deemed appropriate. As in <u>Muller</u>, there is no good cause in this case to consider evidence outside the administrative record.

## IV.    CONCLUSION

For all of the foregoing, reasons, this Court should review the decision to deny plaintiff's application for long term disability benefits under the arbitrary and capricious standard. Moreover, even if the Court finds that *de novo* review is appropriate, it should not consider evidence outside the administrative record.

-24-

DEFENDANT, HSB GROUP, INC.

By _____
     Felix J. Springer (ct05700)
     Eric L. Sussman (ct19723)
     Day, Berry & Howard LLP
     CityPlace I
     Hartford, Connecticut 06103-3499
     (860) 275-0100
     (860) 275-0343 (fax)
     Its Attorneys

## **CERTIFICATION**

     THIS IS TO CERTIFY that a copy of the foregoing was mailed this date, via first class mail, postage prepaid, to:

Judith D. Meyer, Esq.
152 Simsbury Road
P. O. Box 451
Avon, CT 06001-0451

Michael G. Durham, Esq.
Delaney, Zemetis, Donahue, Durham
  & Noonan
741 Boston Post Road
Guilford, CT 06437

_____
Eric L. Sussman