**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **ROBERT M. HARTRANFT, JR.,** | : | **DOCKET NO. 3:01CV1870(GLG)** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **HARTFORD LIFE AND ACCIDENT** | : | |
| **INSURANCE CO. and HSB GROUP, INC.** | : | |
| **Defendants.** | : | **January 14, 2004** |

**REPLY RE: MOTION IN LIMINE**

Plaintiff seeks rulings on the standard of review and scope of the evidence in this ERISA matter. Defendants assert the Plan includes a clear, unambiguous reservation of discretion, thus they are entitled to highly deferential review without evidence beyond the administrative record.

Plaintiff here responds to the assertions in the Defendant HSB Group Inc.'s Objection to Plaintiff's Motion in Limine ("HSB Mem.") and the Defendant Hartford Life & Accident Insurance Company's Objection to Plaintiff's Motion in Limine ("HLI Mem.").[1]

**1. THE PLAN DOCUMENTS DO NOT JUSTIFY DEFERENTIAL REVIEW.**

It is the defendants who bear the burden to prove they are entitled to deference. Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 249 (2nd Cir. 1999) (citing and quoting

1 Plaintiff will not respond to HLI's first-page footnote, which rather blatantly attempts to prejudice the Court in this legal determination by suggesting facts for which the Court does not have the evidence, except to comment that "the record" does not "establish" the facts set forth in that footnote.

Sharkey v. Ultramar Energy Ltd., 70 F.3d 226, 230 (2d Cir. 1995)). They must present a clear and unambiguous reservation of discretion which is applicable to plaintiff's claim. They have not done so, and the Court should review this claim *de novo.*

Defendants assert that the "arbitrary and capricious" standard applies, because "both the Plan and the Policy are clear in reserving discretion to determine eligibility . . . ." HSB Mem. p.8; HLI Mem. p.8. They assert that the language "the Disability Committee has sole discretion to determine whether a particular situation is intended to be covered by the plan... ," plus the March, 1999 Endorsement, which they assert is incorporated by reference into the Plan, reserve such discretion. The Plan language is ambiguous, however, and the combination of these two documents leads to a further ambiguity of material proportions.

**a. The Plan Language Is Ambiguous.**

The Plan language reserving "sole discretion" in the Disability Committee is ambiguous in itself. The Committee has discretion to determine "whether a particular situation is intended to be covered by the plan." At her deposition, Jodi Lussier specifically stated, referring precisely to this "sole discretion" clause,

> [i]t could mean a number of things. It could mean, you know, is this a disability situation or is this a Workers' Comp situation, for example, you know. It does not necessarily - it's not intended to mean that the Disability Committee made every disability decision that came to it. It was intended to describe the Disability Committee's broad responsibility for the disability plan. That is my understanding of that sentence.

Motion in Limine, Exhibit C, p.26. It would be difficult to find a better description of ambiguity: she said the clause is unclear, and capable of two or more meanings. This is not a

clear statement reserving discretion to determine eligibility for long-term disability benefits. HSB's argument that "at no time did Lussier testify that the 'sole discretion' language 'does not refer to disability determinations'" misses the point. Kinstler requires a clear and unambiguous reservation of discretion specifically to determine eligibility. 181 F.3d at 252. According to Ms. Lussier, this term, which is part of the definition of disability under the Plan, is not a clear statement of anything.[2] HSB's assertion merely points out that this clause also could mean that the Disability Committee's discretion does apply to disability determinations.

**b. The Combination of the Plan and the HLI Policy Creates Further Ambiguity.**

The defendants argue that the Plan incorporates the HLI Policy by reference, and each includes an unambiguous reservation of discretion. These two clauses contradict one another, thereby very precisely creating an ambiguity. Combining the Plan with the Policy, as the defendants insist we are required to do, one document states that the Disability Committee shall have sole discretion, and the other states that HLI shall have discretion. Even if the Court were to accept the defendants' argument that the March, 1999 Endorsement to the Policy was applicable at the pertinent time, the Policy is included in a Plan that reserves "sole discretion" in the Disability Committee; yet the Endorsement reserves discretionary authority in HLI. Taken together, these two are rather plainly capable of two or more different meanings. They

2

Defendant HSB asserts that in his brief plaintiff intentionally "mischaracterized" the testimony of Ms. Lussier. HSB p.11. It is unfortunate that defense counsel finds it necessary to couch his disagreement about interpretation in terms such as "mischaracterizes." It hardly enhances practice before this Court. At any rate, Lussier's testimony abundantly demonstrates precisely the point for which plaintiff cited it.

contradict one another: in one, we read that HLI will have full discretionary authority, and in the other we learn that HSB shall have "sole discretion."

For the same reasons, defendants' argument that the SPD is not the exclusive source of information is misplaced. The documents that could provide other sources of information are at best ambiguous, and do not include a clear reservation of discretion. The handbook contains no such reservation, and the other documents do not clearly reserve discretion in HLI.

**c. HLI Discretion Is a Material Term, the Lack of Which in the SPD Is Prejudicial.**

Defendants argue that silence in an SPD does not negate a term of a plan, so long as it is contained in the plan itself; in this argument, they rely heavily upon Communication Workers of America, et al. v. Nynex Corp., et al., 205 F. Supp. 2d 224 (SDNY 2002). HSB Mem. pp. 9-10; HLI Mem. pp. 16-17. Communication Workers was expressly based upon Pocchia v. Prudential Ins. Co., 74 F. Supp. 2d 240 (EDNY 1999), the case that was overturned on appeal under the name Feifer v. Prudential Ins. Co. of America, 306 F. 3d 1202 (2nd Cir. 2002). Communication Workers was decided before Feifer, so the Court did not have the benefit of the Court of Appeals' reasoning on point, as this Court does. It probably should not be relied upon. More significantly, our Court of Appeals ruled, in Burke v. Kodak Retirement Income Plan, 336 F.3d 103 (2nd Cir. 2003), that prejudice from an SPD's omission of a material term is presumed, and plaintiff need not show actual prejudice.

Defendants also assert that the change rendered by the Endorsement is merely procedural, not material, therefore its absence from the SPD does not prevent them from

enforcing it. HLI Mem. p.18; HSB Mem. pp.13-14. But the Endorsement at issue did more than change the degree of discretion. The Plan the defendants presented to Mr. Hartranft, for which he paid his own money, provided that the people who would determine his claim, if he had to assert one, were the people familiar with his work and his work ethic. *See,* Motion in Limine at Exhibit A, Hartranft Affid. ¶¶ 28, 29 and 31, explaining the materiality of this term.

None of the cases cited by defendants involves a plan where an insurance company was substituted for the employer as the party who had discretion. Armstrong v. Liberty Mutual, 273 F.Supp.2d 295 (2003), involved a new Policy, but both the former and the current one granted discretionary authority to the insurance company. The Court's comment that it would have reached the same decision if the former one had not reserved discretion is dicta, but it should be noted that under both policies the insured was always on notice who would determine his claim.

Defendants cite also to Smathers v. Multi-Tool, Inc., 298 F.3d 191 (3rd Cir. 2002), where the administrator, the plaintiff's employer, inserted a reservation of discretion clause into its health insurance plan, and the Court held the clause could be applied retroactively so long as it was effective when the claim was determined. Smathers did not involve a change from an employer to an insurer exercising discretion over disability benefits it must pay. It is materially different whether an insurance company or one's employer has both the obligation to pay benefits and also the right to decide whether to pay – the distinction plaintiff has made. As the Smathers Court noted, "the employer has 'incentives to avoid the loss of morale and higher wage demands that could result from denials of benefits; suggesting that there is at least some counter

to the incentive not to pay claims." *Id.*, citing and quoting Nazay v. Miller, 949 F.2d 1323, 1335 (3rd Cir. 1991).[3] Similarly, the plaintiff in Grozs-Salomon v. Paul Revere Life Ins. Co., 237 F.3d 1154 (9th Cir. 2001), the plaintiff always knew who would have "sole discretion" to determine her eligibility for benefits. The change of language merely conformed with new ERISA jurisprudence.

In reliance upon the Plan that existed when he paid premiums, Mr. Hartranft reasonably expected that if he had to assert a claim it would be determined by people who knew his work and his work ethic. Before he became disabled, if he had been notified that HLI, rather than the Disability Committee at his Company, would exercise final discretionary authority, he could have chosen other coverage, or other employment. This was precisely the express rationale of the Feifer Court when it held that disability benefits vest, as a matter of law, when the employee becomes disabled, and new terms cannot be applied retroactively. 306 F. 3d 1212. Knowing

---

3

The Smathers decision noted that in the Third Circuit courts give heightened scrutiny to any decision where the party that pays the benefits also determines eligibility. The Third Circuit presumes a structural conflict, so that the beneficiary need not show any evidence that the conflict actually influenced the administrator. 298 F.3d 196 n.9 (citing Pinto v. Reliance Std. Life Ins. Co., 214 F.3d 377, 379 (3d Cir. 2000)). The degree of deference is on a sliding scale, which recognizes precisely the point the plaintiff has made: if the employer is the administrator that both pays the claim and determines eligibility, its scrutiny is under a heightened "arbitrary and capricious" standard of review. But where it is an insurance company that both pays the benefit and makes the determination, the Third Circuit recognizes a need for a far higher level of scrutiny. *Id.* Plaintiff submits that each of the circuit courts of appeals have adopted a body of case law to balance the interests of employees and employers, according to what they perceive as congressional intent. In the Third Circuit, Mr. Hartranft's case would automatically be subject to *de novo* review; so the arguments about whether the written reservation in HLI applied would be immaterial. The Third Circuit recognizes that evidence that such a conflict actually influenced a decision is rarely available to a claimant; there is a presumption that an insurance company that pays the benefits will exercise whatever discretion it can, not to pay the benefits. Only if defendants are prepared to accept Third Circuit jurisprudence on this point, should they be able to assert the Third Circuit's conclusion that welfare benefits do not vest, and policy changes can be applied retroactively to such benefits. So long as we are bound by Second Circuit precedent on the standard of review, we are subject to its jurisprudence on the vesting of LTD benefits.

whether the employer who is familiar with your work history and ethic, rather than the insurance company that must pay the premiums, will determine eligibility, is certainly a material consideration in purchasing long-term disability coverage.

The fact that the employer and the insurer declare the change to be retroactive, or "effective as of" January 1, 1998 or any other date they select, does not alter the law of this jurisdiction. The defendants in Feifer had done exactly the same thing, and the Court held the retroactivity null and void. Indeed, that was the whole point of the ruling on vesting, which would have been superfluous if the insurance company had not attempted to assert its modification "effective as of" a date prior to its enactment. The March, 1999 Endorsement could not change the policy applicable to Mr. Hartranft once he was disabled.

**d. The Policy Does Not Reserve Discretion Absent the Endorsement.**

Defendants argue that the policy adequately reserves discretion in HLI even without the Endorsement. HLI Mem. pp.14-16; HSB Mem. pp.19-20. They appear to suggest that the decision in Larsen v. Prudential Ins. Co. of America, 151 F.Supp.2d 167 (D.Conn. 2001), is at odds with Kinstler. The issue in Larsen was radically different, as the plain language of the policy precluded coverage no matter what standard might be applied. 151 F.Supp.2d 173-74. Moreover, the language in the Larsen policy was not virtually identical to the language that the Court of Appeals found to be insufficient to reserve discretion in Kinstler.

Defendants proffer four phrases they assert reserved unfettered discretion, because, they claim, this language is stronger than the language this Court found sufficient in Larsen. HSB

Mem. p.19; HLI Mem. pp.4-5, 15-16. The third and fourth are that "written proof of loss must be sent to The Hartford," and that "a decision will be made by The Hartford." This does not preclude *de novo* review, because the same thing would be true under any policy or plan, whether it reserves discretion or not. In every case that properly comes to a court for review, a claimant has provided written proof of loss and a decision has been made. The first two phrases, "The Hartford reserves the right to determine if your proof of loss is satisfactory," and that the applicant must "submit proof of loss satisfactory to The Hartford" are the language found insufficient in Kinstler. The Kinstler Court reasoned,

> the word "satisfactory," whether in the phrase "satisfactory proof" or the phrase "proof satisfactory to [the decision-maker]" is an inadequate way to convey the idea that a plan administrator has discretion. Every plan that is administered requires submission of proof that will "satisfy" the administrator. No plan provides benefits when the administrator thinks that benefits should not be paid! Thus, saying that proof must be satisfactory "to the administrator" merely states the obvious point that the administrator is the decision-maker, at least in the first instance.

Stating that HLI reserves a right to determine if the proof of loss is "satisfactory" is the same as stating that the proof must be "satisfactory to the decision-maker." It does not convey discretion. Of course the decision-maker will "decide," or "determine" what proof of loss is satisfactory. This does not convey that the decision is subjective, rather than objective, as the Kinstler Court explained. 181 F.3d at 252.

**e. The Endorsement Is Inapplicable to Mr. Hartranft's Claim.**

HLI admits it added the Endorsement in March, 1999. HLI Mem. pp. 4, 7, 8 and Exhibit D (which is the March, 1999 Endorsement and the March, 1999 provision incorporating it

"Effective January 1, 1998." At the time Mr. Hartranft purchased this insurance, and at the time he became disabled, no plan document included any other warning that HLI might have full discretion and authority to determine eligibility. Reserving such discretion in HLI is a material change, as set forth above, and therefore Feifer v. Prudential Ins. Co. of America, 306 F. 3d 1202 (2nd Cir. 2002), renders it inapplicable to Mr. Hartranft. HSB argues that the holding of Feifer applies only to "material" changes, which the case does not state, but which would not alter its applicability to the instant case because the change to absolute discretion in HLI is material.

HSB argues that Feifer is inapplicable because it had reserved a right to modify the plan. Feifer did not need to hold, in 2002, that an express right to modify a plan is enforceable; that had been black letter law for years. When the Feifer Court said "absent explicit language to the contrary, a plan document providing for disability benefits promises that these benefits vest with respect to an employee no later than the time that the employee becomes disabled," it obviously intended that the plan must state explicitly, that after an employee has become disabled, the administrator can change the terms of the coverage. Otherwise, the holding is excess verbiage.

The defendants assert repeatedly that the reservation of discretion was "inadvertently omitted." It is immaterial whether the omission was intentional, reckless or negligent. It is material only that it was not in the documents. This effort to garner sympathy for a "mere inadvertence" should be given no more weight than a plaintiff's assertion that s/he inadvertently failed to submit an application for coverage under a policy. The only reservation of "discretion" was in the HSB Disability Committee – the committee that awarded Short-Term Disability

Benefits to Mr. Hartranft.

**2. PLAINTIFF SHOULD BE PERMITTED TO PROVIDE ADDITIONAL EVIDENCE TO THE COURT.**

Defendants argue that they provided Mr. Hartranft with abundant opportunity to provide medical information before they decided his claim. HSB Mem. pp. 23-24; HLI Mem. pp. 24-27. But they decided the claim on a basis which he had no reason to anticipate. As set forth in the Motion in Limine, the HLI reviewers focused on whether Chronic Fatigue Syndrome could be diagnosed in the presence of Parkinson's Disease, and whether his Parkinson's symptoms alone rendered him totally disabled. Mr. Hartranft was never made aware of the question until after he received both the final administrative decision and also the further documentation requested by his attorney. The only opportunity to provide appropriate information is the upcoming trial.

Plaintiff submits that the Court should recognize a "structural" conflict of interest, which provides good cause to go beyond the administrative record. The plaintiff need not show any actual prejudice where there is a structural conflict. DeFelice v. American Int'l Life Assurance Co. of New York, 112 F.3d 61, 67 (2d Cir. 1997).

**CONCLUSION**

For all of the forgoing reasons, the Court should rule that *de novo* review applies, and should allow Mr. Hartranft to introduce additional evidence.

RESPECTFULLY SUBMITTED,
PLAINTIFF

By /s/ Judith D. Meyer
Judith D. Meyer
Fed Bar No.: CT04976
152 Simsbury Road
P.O. Box 451
Avon, CT 06001-0451
Tel. (860) 678-7711
Fax (860) 677-6832
e-mail: judithdmeyer@igc.org
HIS ATTORNEY

**CERTIFICATION**

This is to certify that a copy of the foregoing was sent via first-class mail, postage prepaid, this 15th day of January, 2004, to the following counsel of record:

| | |
|---|---|
| Michael G. Durham, Esq.<br>Delaney, Zemetis, Donahue,<br>Durham & Noonan, P.C.<br>741 Boston Post Road, Suite 306<br>Guilford, CT 06437 | Felix J. Springer<br>Eric L. Sussman, Esq.<br>Day, Berry & Howard, LLP<br>City Place I<br>Hartford, CT 06103-3499 |

/s/ Judith D. Meyer
Judith D. Meyer