UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Robert M. Hartranft, Jr.      :
                              :
v.                            :      No. 3:01cv1870 (JBA)
                              :
Hartford Life and Accident    :
Insurance Co. and             :
HSB Group, Inc.               :

### Ruling on Motion in Limine [Doc. # 36]

Plaintiff has filed a motion in limine on the appropriate standard of review and the scope of the evidence in this suit for long-term disability benefits under ERISA. Plaintiff argues that the Court should review his ERISA claim de novo, and should permit him to introduce evidence outside of the administrative record.

## I. Background

Plaintiff Robert M. Hartranft, Jr. ("Hartranft") was an employee of co-defendant HSB Group, Inc. ("HSB") from 1996 through March 1, 1999, and was a participant in HSB's Employees' Disability Plan ("HSB Plan"), an Employee Welfare Benefit Plan governed by ERISA. The HSB Plan provides both short-term and long-term disability benefits, and covers HSB Plan participants in the event they become "totally disabled." Hartranft states that he was diagnosed with Parkinson's Disease in 1993, and from the fall of 1998 through 1999, began suffering symptoms such as fatigue, sleep disturbance, headaches, upper respiratory tract

1

infection symptoms, loss of balance and gastrointestinal distress. Hartranft Aff. [Doc. # 36, Ex. A] at ¶ 13. Hartranft also became severely depressed at this time. See id. at ¶ 16. At the time these symptoms began, Hartranft insisted that he merely suffered from an "intractable flu, or some temporary health problem." See id. a ¶ 17. According to Hartranft, he had become disabled in 1998, but was unable to admit to himself or others that he suffered a permanent disability until the year 2000. See id. at ¶¶ 18-20.

In April 2000, Hartranft wrote to HSB and requested both short-term and long-term disability benefits, providing HSB with a letter from his physician stating that he had become permanently disabled by February 1999, while he was still employed at HSB. See id. at ¶ 21. On June 2, 2000, HSB informed Hartranft that his short-term disability benefits were denied, and that a separate application for long-term disability benefits was required as The Hartford Life and Accident Insurance Company ("Hartford Life"), not HSB, determined eligibility for long-term disability benefits under the HSB Plan. See id. at ¶ 22; Letter of Jodi Lussier, Assistant Vice President for Benefits at HSB, June 2, 2000 [Doc. # 42, Ex. G]. Hartranft subsequently successfully appealed the denial of his short-term disability benefits, and was awarded benefits effective February 26, 1999. See Hartranft Aff. [Doc. # 36, Ex. A] at ¶¶ 23, 25. In August

2000, Hartranft also applied for and was granted Social Security
Disability Income from the Social Security Administration.  <u>See</u>
<u>id</u>. at ¶ 26.

Hartranft submitted his application for long-term disability
benefits to HSB in September 2000, which then sent the
application to Hartford Life.  <u>See</u> <u>id</u>. at ¶ 27.  On November 27,
2000 and January 3, 2001, Lisa Lavallee, an Examiner at Hartford
Life, wrote to Hartranft requesting further information about his
claim and providing him with a copy of a Certificate booklet
containing the plan provisions.  <u>See</u> Letter of Lisa Lavallee,
Nov. 27, 2000 [Doc. # 42, Ex. I] at 605; Letter of Lisa Lavallee,
Jan. 3, 2001 [Doc. # 42, Ex. I] at 579.  Hartford Life denied
Hartranft's application for long-term disability benefits on
February 8, 2001, concluding that "the medical evidence submitted
in support of [Hartranft's] claim for benefits does not establish
that [he] meet[s] the policy definition of Total Disability
through and beyond the Elimination Period."  Letter of Lisa
Lavallee, Feb. 8, 2001 [Doc. # 42, Ex. I] at 687.  Hartranft's
appeal was denied on August 1, 2001.  <u>See</u> Letter of Robert R.
Dombrowski, Jr., Appeal Specialist, Benefit Management Services,
Hartford Life, Aug. 1, 2001 [Doc. # 42, Ex. 1] at 681.

## II.  Discussion

At issue is whether this Court must defer to the
administrative denial Hartranft's long-term disability benefits,

reviewing the decision under an abuse of discretion standard, or whether this Court may engage in a de novo review of Hartranft's claim.  The answer to this question largely determines whether Hartranft will be allowed to introduce evidence outside of the administrative record in support of his claim.

**A.  Scope of Review**

"A denial of benefits challenged under Section 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  "Where the plan reserves such discretionary authority, denials are subject to the more deferential arbitrary and capricious standard, and may be overturned only if the decision is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'"  Kinstler v. First Reliance Standard Life Insurance Co., 181 F.3d 243, 249 (2d Cir. 1999) (quotation omitted).  "The plan administrator bears the burden of proving that the arbitrary and capricious standard of review applies, since 'the party claiming deferential review should prove the predicate that justifies it.'"  Id. (quotation omitted). Hartranft's disability benefits are governed by three operative documents: the HSB Plan, the Hartford Life Group Insurance Policy, and the Summary Plan Description contained in

4

"Making Tracks".  The HSB Plan empowers the HSB Disability
Committee with "sole discretion to determine whether a particular
situation is intended to be covered by the Plan." The HSB Group,
Inc. Employees' Disability Plan [Doc. # 42, Ex. A] at ¶ 1.3.  The
HSB Plan, however, provides that "Long-term Disability Benefits
shall be determined in accordance with the terms of the Group
Insurance Policy in effect between HSB and The Hartford Life and
Accident Insurance Company effective January 1, 1998 (the
'Policy'), a copy of which is attached to and incorporated into
this Plan." Id. at § III.  The Group Insurance Policy, in turn,
establishes Hartford Life as the decision-maker on long-term
disability benefits claims.  See, e.g. Group Long Term Disability
Insurance Policy [Doc. # 42, Ex. B] at 22 ("A decision will be
made by The Hartford no more than 60 days after the receipt of
the request. . . . The written decision will include specific
references to the policy provisions on which the decision is
based.").  Unlike the HSB Plan, during the period of Hartranft's
employment with HSB, the Group Insurance Policy did not
specifically provide that Hartford Life had the discretion to
determine eligibility for benefits and interpret plan provisions.

On March 22, 1999, Hartford Life wrote to HSB regarding
amendments to the Group Insurance Policy, stating that "[d]uring
a recent examination of the Policy, it was discovered that
certain critical ERISA language was inadvertently omitted from

5

the Policy booklet-certificate," and provided HSB with "endorsements" containing previously omitted language. See Letter of Susan Adamowicz, Assistant Director, Customer Services, Hartford Life, Mar. 22, 1999 [Doc. # 42, Ex. D]. The Endorsement issued on that date provided that "The Hartford has full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." Endorsement [Doc. # 42, Ex. D] at 2. The Endorsement retroactively listed its effective date as January 1, 1998. See id.

The benefits information was made available to Hartranft through the HSB employee handbook, entitled "Making Tracks", which includes a Summary Plan Description ("SPD") describing the short-term and long-term benefits of the HSB Employees' Disability Plan. The SPD does not inform employees that the Plan Administrator has sole discretion to determine eligibility for benefits under the Plan, and does not inform employees that long-term disability benefits are provided through an insurance policy with Hartford Life. The SPD provides, however, that "[t]he descriptions in Making Tracks are intended solely to highlight HSB policies and benefit plans. Descriptions are not intended as substitutes for the documents which legally govern each policy and benefit plan summarized in this handbook." Making Tracks [Doc. # 42, Ex. C] at A-1.

Thus, of the three relevant documents at issue here, only the Group Insurance Policy, through an Endorsement appended to the policy on March 22, 1999, explicitly reserved discretion in Hartford Life to interpret plan provisions and determine eligibility for benefits.  In order to assess which standard of review applies, it is first necessary to determine whether the March 22, 1999 Endorsement governs Hartranft's claim for benefits.

The Endorsement was an effective part of the Group Insurance Policy at the time Hartranft applied for long-term disability benefits in September 2000, and, by its terms, was retroactively effective as of January 1, 1998, prior to the time Hartranft claims he became disabled.  Defendants thus argue that this Court should give effect to the Endorsement as the operative policy at the time Hartranft applied for benefits and at the time Hartford Life determined his eligibility for benefits.  Alternatively, defendants argue that the retroactive application of the Endorsement to January 1, 1998 is permissible, making the Endorsement effective when Hartranft's claimed disability triggering coverage came into existence.

The Courts of Appeal considering the question of which policy controls a court's review of the denial of ERISA plan benefits are generally in agreement that under ordinary circumstances, if the employee's benefits have not vested, then

7

the operative plan is that which is in effect at the time the
plan administrator makes the determination on eligibility for
benefits.  The "the general rule" under ERISA is "that an
employee welfare benefit plan is not vested and that an employer
has the right to terminate or unilaterally to amend the plan at
any time." Joyce v. Curtis-Wright Corp., 171 F.3d 130, 133 (2d
Cir. 1999) (citations and internal quotation marks omitted).
Thus, as the Seventh Circuit has reasoned:

> If benefits have not vested, the plan participant does
> not have an unalterable right to those benefits.  The
> fact that benefits have not vested suggests that the
> plan is malleable and the employer is at liberty to
> change the plan and thus change the benefits to which a
> participant is entitled.  Since the employer can change
> the plan, then it must follow that the controlling plan
> will be the plan that is in effect at the time a claim
> for benefits accrues.  We have held that a claim
> accrues at the time benefits are denied.  Therefore,
> absent any language suggesting ambiguity on the vesting
> question, the controlling plan must be the plan in
> effect at the time the benefits were denied.

Hackett v. Xerox Corporation Long-Term Disability Income Plan,
315 F.3d 771, 774 (7th Cir. 2003) (citations omitted).

Employing similar reasoning, the Ninth Circuit in Grosz-Salomon
v. Paul Revere Life Insurance Co., 237 F.3d 1154 (9th Cir. 2001),
held that the revised benefit plan in effect at the time the
plaintiff's long-term disability benefits were denied, which,
unlike the earlier plan, conferred discretion on the plan
administrator to construe and interpret the plan and make claims
determinations, determined the appropriate standard of review.
See id. at 1160-61 ("Because no employees' rights were vested,

8

[the employer] was at liberty to change its long-term disability plan.  It did so in October 1993.  Because Grosz-Salomon's cause of action accrued several years later, in December 1997, this court must look to the revised plan to determine the appropriate standard of review").

Distinguishing his case, Hartranft argues that his benefits were in fact vested, because the only plan document he received during the period of his employment — the SPD in the Employee Handbook "Making Tracks" — contained no explicit language permitting Hartford Life to amend the policy or change or terminate his benefits under the policy.  See Hartranft Aff. [Doc. # 36, Ex. A] at ¶¶ 8-9; Making Tracks [Doc. # 42, Ex. C]. In Feifer v. Prudential Insurance Co., 306 F.3d 1202 (2d Cir. 2002), the Second Circuit held that "absent explicit language to the contrary, a plan document providing for disability benefits promises that these benefits vest with respect to an employee no later than the time that the employee becomes disabled." Id. at 1212.  The Second Circuit based its holding on "the rule in this Circuit that an otherwise ambiguous plan should be construed against the interests of the party that drafted the language," and on the "particular circumstances regarding disability benefits." Id. at 1212 (citation and international quotation marks omitted).  As the court explained, "the theory of unilateral contract . . . is that the document containing the

9

contract's terms is an offer that is accepted by the employee's
commencing or continuing to work for the offeror.  If the
employee does not like the terms, he or she can decline and seek
better terms elsewhere.  But this choice is one that an employee,
once disabled, cannot make.  Nor does a disabled employee
generally enjoy the retiree's advantage of being able to select,
or at least predict, his or her date of separation from the
company, and plan accordingly. . . .  The nature of this benefit
strongly suggests, then, that the parties did not intend or
expect that [the employer] could unilaterally change the terms of
long- or short-term disability benefits after the date of
disability absent an explicit provision to that effect."  Id.

Defendants here do not dispute that the SPD was the only
plan document that Hartranft received during the period of his
employment with HSB.  Defendants argue, however, that the SPD
expressly permits HSB to modify or terminate any part of the
plan.  As the SPD provides:

> HSB intends to continue the plans described in this Handbook
> indefinitely, but reserves the right to change, modify,
> amend, or terminate any of them in whole or in part at any
> time.  Any such amendment, modification, suspension or
> termination of any plan may be made, with respect to the
> ESOP, Retirement and Thrift Incentive Plans, by the Board of
> Directors of HSB by a duly adopted resolution amending such
> plan, or, with respect to all other plans, by action of HSB
> Senior Officers . . . HSB does not promise the continuation
> of any health benefits nor does it promise any specific
> level of benefits during retirement."

Making Tracks [Doc. # 42, Ex. C] at X-7.

10

Defendants argue that the language in the SPD clearly establishes that Hartranft had no vested rights to benefits.  Hartranft responds, however, that the SPD provision is inapplicable to his denial of long-term disability benefits by Hartford Life, because it provides for a particular procedure for amendments to the plan (i.e. only HSB Senior Officers were authorized to amend), because it nowhere states that Hartford Life may unilaterally amend or modify the Plan, and because the provision does not explicitly allow changes to be made after an employee becomes disabled. Thus, Hartranft argues that <u>Feifer</u> directs that his benefits are vested.

Defendants do not directly address Hartranft's argument that the SPD contains insufficient language under <u>Feifer</u> to preclude vesting.  Instead, defendants' argument that Hartranft's benefits had not vested at the time of his claimed disability focuses on the other plan documents, which defendants assert may appropriately be examined.  Defendants note that the Group Insurance Policy gave Hartford Life the authority to amend the policy.  <u>See</u> Group Insurance Policy [Doc. # 42, Ex. B] at PI-7.11 ("Notwithstanding the above, after the policy has been in force for 12 months, The Hartford may change any or all of the policy's provisions by notifying the Policyholder.").  They contend that the Group Insurance Policy language applies to Hartranft's claim because by its terms the HSB Plan expressly incorporates the

Group Insurance Policy.  <u>See</u> The HSB Group, Inc. Employees'
Disability Plan [Doc. # 42, Ex. A] at § III ("Long-term
Disability Benefits shall be determined in accordance with the
terms of the Group Insurance Policy in effect between HSB and The
Hartford Life and Accident Insurance Company effective January 1,
1998 (the 'Policy'), a copy of which is attached to and
incorporated into this Plan.").  While defendants do not dispute
that Hartranft did not receive the Group Insurance Policy or the
HSB Plan during the period of his employment,[1] they argue that it
is appropriate to look beyond the SPD to these documents.
Defendants' argument is foreclosed by Second Circuit precedent.

    In <u>Heidgerd v. Olin Corporation</u>, 906 F.3d 903, (2d Cir.
1990), a case in which only a summary plan document, not the plan
itself, was distributed to employees, the Second Circuit
concluded that where "the terms of a plan and those of a plan
summary conflict, it is the plan summary that controls."  <u>Id</u>. at
908.  The Court reasoned, "the statute contemplates that the
summary will be an employee's primary source of information
regarding employment benefits, and employees are entitled to rely
on the descriptions contained in the summary.  To allow the Plan

_____

    [1]The parties dispute whether Hartranft received a copy of
the full Group Insurance Policy, including the March 22, 1999
Endorsement, prior to the time he applied for long term
disability benefits.  For the purposes of the vesting question,
the dispute over receipt of the March 22, 1999 Endorsement is not
relevant.  Hartranft terminated his employment with HSB by March
1, 1999.

to contain different terms that supercede the terms of the Booklet would defeat the purpose of providing the employees with summaries." Id. Here, because the SPD is merely silent on whether Hartford Life had authority to amend the benefits terms, and does not affirmatively misrepresent that Hartford Life had no authority, defendants argue that there is no conflict between the SPD and the other plan documents and that therefore reference to the other documents is appropriate. Defendants' argument is foreclosed by Burke v. Kodak Retirement Income Plan, 336 F.3d 103 (2d Cir. 2003). In Burke, the Second Circuit was confronted with a situation in which the summary plan document was silent on whether an affidavit was required as part of an application for survivor income benefits, while the Plan itself made clear that an affidavit was required. The Court concluded, "[b]ecause the relevant section of the SPD omits the affidavit requirement, it conflicts with the Plan. Thus, the SPD controls." Id. at 111.

Defendants also argue that the SPD contains a disclaimer that its summary descriptions "are not intended as substitutes for the documents which legally govern each policy and benefit plan," Making Tracks [Doc. # 42, Ex. C] at A-1, and that therefore Hartranft was on notice that the SPD terms could not control. This argument, too fails under Second Circuit precedent, which has held "[i]t is of no effect to publish and distribute a plan summary booklet . . . and then proclaim that

13

any inconsistencies will be governed by the plan." <u>Heidgerd</u>, 906 F.2d at 908; <u>see</u> <u>also</u> <u>Feifer</u>, 306 F.3d at 1209.  Accordingly, this Court finds that on the issue of whether Hartford Life was given authority to amend the benefit terms, the SPD language controls.

The SPD language failed to give notice to Hartranft that he could reasonably expect amendments to his policy to be made in the manner they were made, and therefore, under the theory of unilateral contract set forth in <u>Feifer</u>, and in light of <u>Feifer's</u> direction that ambiguities should be construed against the interests of the drafter, Hartranft's long-term disability benefits will be deemed vested at the time his claimed disability occurred.  This conclusion is not without recognition of the closeness of the issue presented.  The Court finds unpersuasive, for example, Hartranft's contention that the SPD provision is ambiguous as to whether HSB is authorized to change the terms of coverage even after an employee has become disabled, because the provision clearly states that HSB may change the plan "at any time," and that "HSB does not promise the continuation of any health benefits."  Further, it cannot be said that Hartranft had no notice that the terms of his policy could be changed, as the SPD clearly gave this authority to HSB.  Moreover, as Hartranft acknowledges that the SPD did not inform him that his long-term disability benefits were governed by HSB's insurance policy with

14

Hartford Life, the absence of an express authorization for Hartford Life to modify the policy in the SPD would not have been meaningful to Hartranft at the time he accepted the contract's terms. The presumed decision-maker under the SPD was HSB, which had authority to modify the terms of the HSB Plan.

Nonetheless, as Hartranft points out, the SPD never informed him of Hartford Life's involvement in the long-term disability plan. Thus, in accepting the offered terms in the SPD by continuing his employment with HSB and purchasing additional coverage, it cannot be said that he accepted a policy that gave Hartford Life the right to amend plan terms or make claims determinations. Knowing who was authorized to amend the plan and who the decision-maker would be in the event of disability is significant. As Hartranft states, "it was always my understanding that if I had to apply for benefits, it would be to my employer, which included individuals who were familiar with my work and my work ethic." Hartranft Aff. [Doc. # 36, Ex. A] at ¶ 28. This is a case, therefore, in which an insurance company has been unilaterally substituted for the employer as the entity with discretion over the terms of the plan without informing the employee subject to the plan. Because the SPD here contains no explicit language that reserves Hartford Life's right to amend or revoke long-term disability benefits, this Court construes the ambiguity against the drafter and, in accordance with Feifer,

15

concludes that Hartranft's benefits vested no later than the time when he became disabled.  See Feifer, 306 F.3d at 1212.

Having concluded that Hartranft's benefits vested at the time of his claimed disability, the question becomes whether it is nonetheless appropriate to apply the Endorsement retroactively.  Defendants argue that because the March 22, 1999 Endorsement contains a mere procedural change, reserving Hartford Life's discretion to construe the policy and determine claims, it did not affect any vested rights in substantive benefits that Hartranft may have had.  Defendants find support in the Third Circuit's decision in Smathers v. Multi-Tool, Inc., 298 F.3d 191 (3d Cir. 2002).  Confronted with the identical issue in Smathers of a plan amendment that gave the administrator discretionary authority in making benefits determinations, the Third Circuit concluded that "the plan amendment at issue did not change the coverage under the plan or the substance of Smathers' benefits or his entitlement to them. . . All that was changed was the scope of the administrator's discretion and authority." Id. at 195. Thus, the Third Circuit looked to the plan in effect on the date the administrator actually made the benefits determination in order to determine the appropriate scope of review.

The Third Circuit's distinction between substantive and procedural changes to a benefits plan is based on its conclusion that procedural changes do not result in the retroactive denial

16

of a vested right.  See id. at 195.  In this Court's view, that
distinction both understates the impact of procedural changes and
unduly constrains the notion of retroactivity to a retroactive
denial of rights rather than a retroactive change in a plan
impacting those rights.  Procedural plan amendments no less than
substantive amendments impact the vested rights of a plan
participant.  The plan amendment at issue here expands the
discretion of Hartford Life and determines the scope of judicial
review, issues which certainly are of great importance to
Hartranft at this stage, and one which cannot be said to be
irrelevant to an employee's decision ex ante, when accepting or
rejecting the terms of a unilateral contract.  Under the theory
of unilateral contract set forth in Feifer, 306 F.3d at 1212,
this Court concludes that the terms of a plan affecting vested
rights cannot be applied retroactively.[2]  Accordingly, the
operative plan terms are those in effect at the time of
Hartranft's claimed disability.[3]

Here, the SPD itself contains no language reserving
discretion in the HSB Plan Administrator or in Hartford Life to

---

[2]While the factual background in Feifer involved a
substantive change of benefits, this Court does not find the
unilateral contract theory on which the Second Circuit relied to
be so limited.  See 306 F.3d at 1211-1212.

[3]None of the parties are claiming that Hartranft became
disabled after the March 22, 1999 Endorsement was issued, or that
Hartranft would be eligible under the plan if his disability
occurred after the March 22, 1999 Endorsement.

determine eligibility for benefits under the plan.  See Making
Tracks [Doc. # 42, Ex. C].  Moreover, even if it were appropriate
to examine the HSB Plan and the Group Insurance Policy in effect
prior to the March 22, 1999 Endorsement, these documents do not
explicitly reserve discretion in Hartford Life to interpret the
plan and determine eligibility for benefits.  The HSB Plan gives
the HSB "Disability Committee" the "sole discretion to determine
whether a particular situation is intended to be covered by the
Plan."  The HSB Group, Inc. Employees' Disability Plan [Doc. #
42, Ex. A] at ¶ 1.3.  Nowhere in the HSB Plan itself is
discretion reserved in Hartford Life.  Nor is the language in the
Group Insurance Policy, incorporated into the HSB Plan,
sufficient to express a reservation of discretion in Hartford
Life.  The defendants point to the following language in the
Group Insurance Policy:  "The Hartford reserves the right to
determine if your proof of loss is satisfactory;" Group Long Term
Disability Insurance Policy [Doc. # 42, Ex. B] at 21; "You will
be paid a monthly benefit if . . . you submit proof of loss
satisfactory to The Hartford;" id. at 15; "Written proof of loss
must be sent to The Hartford;" id. at 20; and "A decision will be
made by The Hartford no more than 60 days after the receipt of
the request . . . .  The written decision will include specific
references to the policy provisions on which the decision is
based," id. at 22.  The language is virtually identical to that

which the Second Circuit found insufficient in Kinstler v. First
Reliance Standard Life Insurance Company, 181 F.3d 243 (2d Cir.
1999). In Kinstler, the Plan language provided that "We [i.e. the
Plan Administrator] will pay a Monthly Benefit if an Insured . .
. submits satisfactory proof of Total Disability to us." Id. at
251.  The Second Circuit concluded that

> the word 'satisfactory,' whether in the phrase 'satisfactory
> proof' or the phrase 'proof satisfactory to [the decision-
> maker]' is an inadequate way to convey the idea that a plan
> administrator has discretion.  Every plan that is
> administered requires submission of proof that will
> 'satisfy' the administrator.  No plan provides benefits when
> the administrator thinks that benefits should not be paid!
> Thus, saying that proof must be satisfactory 'to the
> administrator' merely states the obvious point that the
> administrator is the decision-maker, at least in the first
> instance.  Though we reiterate that no one word or phrase
> must always be used to confer discretionary authority, the
> administrator's burden to demonstrate insulation from de
> novo review requires either language stating that the award
> of benefits is within the discretion of the plan
> administrator or language that is plainly the functional
> equivalent of such wording.  Since clear language can be
> readily drafted and included in policies . . . courts should
> require clear language and decline to search in semantic
> swamps for arguable grants of discretion.

Id. at 252.

As in Kinstler, here the Group Insurance Policy language is
insufficient as it merely identifies Hartford Life as the
plaintiff thought it would be, decision-maker, and is neither the
express nor functional equivalent of a reservation of discretion.

        Having found the March 22, 1999 Endorsement inapplicable,
and no reservation of discretion to Hartford Life in the plan
documents in effect at the time of Hartranft's claimed

disability, the Court concludes that a <u>de</u> <u>novo</u> standard of review applies.

## B.  Evidence Outside of the Administrative Record

Hartranft seeks to introduce evidence before this Court that is outside of the administrative record before Hartford Life. "The decision whether to consider evidence from outside the administrative record is within the discretion of the district court.  Nonetheless, the presumption is that judicial review 'is limited to the record in front of the claims administrator unless the district court finds good cause to consider additional evidence.'"  <u>Muller v. First Unum Life Insurance Co.</u>, 341 F.3d 119, 125 (2d Cir. 2003) (quoting <u>DeFelice v. Am. Int'l Life Assurance Co. of N.Y.</u>, 112 F.3d 61, 66 (2d Cir. 1997)).  Applying this standard, the Second Circuit concluded in <u>DeFelice</u>, for example, that "[a] demonstrated conflict of interest in the administrative reviewing body is an example of 'good cause' warranting the introduction of additional evidence." <u>DeFelice</u>, 112 F.3d at 66.  In contrast, in <u>Muller</u>, the Second Circuit found no "good cause" to submit additional materials where the plaintiff was given "ample time to submit additional materials" to the administrator and where the supplementary materials before the District Court, which included letters from two treating physicians, were "merely written to 'clarify' their previous correspondence" with the administrator.  <u>Muller</u>, 341 F.3d at 125-

26.

Here, Hartranft claims there is good cause for the
submission of additional materials because, like <u>DeFelice</u>, there
was a structural conflict of interest in his long-term disability
claims determination as Hartford Life was the party that both
paid the benefits and reviewed the claim.  Hartranft acknowledges
that Hartford Life had his medical records reviewed by two
physicians from University Disability Consortium ("UDC"), an
outside entity, but suggests that UDC was itself conflicted
because its business relationship with Hartford Life was just
beginning at the time it participated in Hartranft's claim,
giving them "every reason to provide the answers [Hartford Life]
wanted to hear."  Motion in Limine [Doc. # 36] at 11; <u>see</u> <u>also</u>
Letter of Robert R. Dombrowski, Appeal Specialist, Benefit
Management Services, Hartford Life, Aug. 1, 2001 [Doc. # 42, Ex.
I] at 685 (describing participation of UDC).  Further, Hartranft
asserts that the UDC physicians unduly focused on whether his
treating physician correctly diagnosed him with Chronic Fatigue
Syndrome.  <u>See</u> Panel Medical Records Review, UDC, July 16, 2001
[Doc. # 36, Ex. B] at Attachment 2.  Thus, he argues that because
he was not made aware of UDC's review, he had no way to rebut the
UDC assessment or explain the confusion of symptoms and
diagnoses.  <u>See</u> Motion in Limine [Doc. # 36] at 11 ("If the
questions had been raised before the final review, [he] could

have brought an expert on Parkinson's Disease to explain the
overlapping physiological, psychological, and neurological
problems he has suffered continually from late 1998 through the
current time.").

The Court finds good cause to admit evidence outside of the
administrative record, as it is undisputed that Hartford Life was
solely responsible both for deciding his benefits claim and
appeal and for paying the benefits due, if the claim were
approved.  The UDC physicians hired by Hartford Life cannot be
deemed decision-makers, as they merely reviewed and interpreted
Hartranft's medical records, played no role in interpreting the
plan provisions, and made no recommendation on the ultimate issue
of whether Hartranft was disabled within the meaning of the
policy.  In this conclusion, DeFelice is controlling.  In
DeFelice, the Second Circuit found a "conflicted administrator"
where "[t]he ERISA Appeals Committee which reviewed Ms.
DeFelice's claim was comprised entirely of [defendant's]
employees--hardly a neutral decision-making body."  DeFelice, 112
F.3d at 66.  While additional procedural irregularities were
present in DeFelice that are not claimed here, such as that
"there existed no established criteria for determining an
appeal," and that "the Committee apparently had a practice of
destroying or discarding all records within minutes after hearing
an appeal," id., DeFelice's finding of good cause ultimately

required only a "demonstrated conflict of interest in the
administrative reviewing body," <u>id</u>. at 67.  Most district courts
in this Circuit have interpreted <u>DeFelice</u> accordingly.  <u>See</u>, <u>e.g</u>.
<u>Harris v. First Unum Life Ins. Co.</u>, No. 02-CV-300, 2004 WL
1242415, at *5-6 (N.D.N.Y. June 4, 2004)(reviewing district court
decisions applying <u>DeFelice</u>'s <u>per</u> <u>se</u> conflict of interest rule);
<u>Parker v. Reliance Standard Life Ins. Co.</u>, No. 99-CV-1822, 2000
WL 97362, at *2 n.2 (S.D.N.Y. Jan. 27, 2000) ("Although the Court
[in <u>DeFelice</u>] cited other factors in the appeal process that it
found questionable . . . its holding rested clearly on its
finding a conflict of interest arising out of the makeup of the
appeals board").  Moreover, <u>DeFelice</u> concluded that "[t]he
plaintiff need not demonstrate that the conflict caused her
actual prejudice in order for the court to consider the conflict
to be 'good cause.'"[4] <u>Id</u>.

Defendants argue that this case is closer to <u>Muller</u>, where
the Second Circuit found that the district court did not abuse

_____

[4]The issue of the scope of <u>de</u> <u>novo</u> review is distinct from
the issue of whether a <u>de</u> <u>novo</u> or arbitrary and capricious
standard of review applies in the first instance.  Thus, under
<u>DeFelice</u>, the scope of <u>de</u> <u>novo</u> review may be expanded to look
outside of the administrative record if there is a conflict of
interest, without a showing of prejudice.  However, where there
is a reservation of discretion in the administrator, the Second
Circuit "adhere[s] to the arbitrary and capricious standard of
review in cases turning on whether the decision was based on an
alleged conflict of interest, unless the conflict affected the
choice of a reasonable interpretation." <u>Whitney v. Empire Blue
Cross and Blue Shield</u>, 106 F.3d 475, 477 (2d Cir. 1997).

its discretion in finding no good cause to look outside of the administrative record because the plaintiff was given ample opportunity to supplement the record during the administrative process. <u>Muller</u>, however, did not consider the conflict of interest issue. Because there is an inherent structural conflict where an insurer decides benefits claims for which they is responsible for paying, and because, under <u>DeFelice</u>, no showing of actual prejudice is required, this Court concludes that plaintiff has established good cause for looking outside the administrative record.

### III.  Conclusion

For the foregoing reasons, the Court concludes that it will review plaintiff's claim <u>de novo</u> and will allow plaintiff to submit additional evidence in support of his claim. Accordingly, Plaintiff's Motion in Limine [Doc. # 36] is GRANTED.


IT IS SO ORDERED.


/s/

_____
_____Janet Bond Arterton, U.S.D.J.


**Dated at New Haven, Connecticut, this 30th day of September, 2004.**